## J. Paul Preseault v. Raymond Wheel, Building Inspector and Zoning Administrator of the City of Burlington; and The City of Burlington

[315 A.2d 244]

No. 144-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

*Richard H. Thomas, Esq.,* of *Gravel & Shea,* Burlington, for Plaintiff.

*Joseph E. McNeil,* City Attorney, and *Michael W. Wool,* Assistant City Attorney, for Defendants.

**Smith, J.** The efforts of Mr. J. Paul Preseault, the plaintiff in this action, to construct thirty-eight duplex family houses on a parcel of land owned by him on North Avenue in the City of Burlington, have met with considerable opposition. Previous legal battles between him and adjacent landowners have reached this Court. See *Wright* v. *Preseault,* 131 Vt. 403, 306 A.2d 673 (1973); and *In re Preseault,* 130 Vt. 343, 292 A.2d 832 (1972). His current opponents, the City of Burlington and its building inspector and zoning administrator, appeal here from a decision rendered in his favor below by the Chittenden County Court.

Conditional approval of the planning commission of the City of Burlington to the plaintiff's development proposal was given in December, 1970. The condition was satisfied on

March 21, 1971, when the plaintiff and the City executed a covenant and agreement under which the plaintiff was allowed to construct private ways rather than streets built to the specifications required of city streets, and the defendant City was to have no maintenance responsibility with respect to these private ways. At that time the local zoning ordinances allowed this departure from the street specifications.

On April 30, 1971, Raymond Wheel, Burlington's building inspector and zoning administrator, issued a building permit for four and one-half units to the plaintiff. (One unit equals one duplex house.)

On August 5, 1971, amendments to the local zoning ordinances became effective. It is not necessary to discuss these amendments in detail; suffice it to say that if they had been in force late in 1970 or early in 1971, the covenant between plaintiff and the City and the planning commission's approval would not have been possible. Among other things, departures from street specifications would not have been allowed.

In March, 1972, the plaintiff received a building permit from the building inspector for the remaining 33½ units, and in April of the same year the first permit for the four and one-half units was reissued.

Finding No. 9 of the lower court discloses why the plaintiff called yearly on the building inspector.

> 9. Title 5, Chapter 1, Section 725 of the Revised City of Burlington Ordinances provides that no building permit granted shall be valid after one year from its date, unless a substantial portion of the work to be done under it shall have been completed during such period. There is no specific process provided in the Burlington Ordinances for renewal of permits previously issued other than applications as in the first instance. Plaintiff did not substantially complete the work to be done under such permits and has not in fact commenced construction of any dwelling units to this date.

The plaintiff's difficulties with the building inspector began at his 1973 visit, on February 20, when reissuance of both building permits was refused. The record is silent as to whether the building inspector, when reissuing the four and one-half unit permit in 1972, considered the question of how much work the plaintiff had completed. The record does show

that the substantial completion question was not the rationale behind the building inspector's denial of the permits on February 20, 1973. This denial was based specifically on 24 V.S.A. § 4443(c), which provides:

> If a public notice is issued under this chapter with respect to an amendment of a by-law, the administrative officer shall not issue any permit under section (a)(1) of this section, if such permit is with regard to the by-law of which such amendment is proposed, for the period commencing upon the date of that public notice and ending upon the effective date of the adoption or rejection of such amendment, except with the written consent of the legislative body of the municipality given after public hearing upon public notice.

The county court, in Finding No. 14, found that the plaintiff's application for renewal of the building permits on February 20 preceded the issuance of public notice on March 10 by the Burlington City Council. The defendants argue that the required public notice occurred on January 10, 1973, when the planning commission first warned of a public hearing on the proposed amendments which were eventually adopted on April 26, 1973.

■■ Regardless of when public notice was in fact issued, the building permits were denied by the building inspector for an improper reason. In *Wright* v. *Preseault, supra*, 306 A.2d at 679, this Court held:

> However, nowhere has it been shown that the building inspector was the administrative officer who has been appointed by the planning commission pursuant to 24 V.S.A. § 4442. Absent such showing, it cannot be said that the building inspector was the administrative officer and thus charged with the enforcement of the zoning ordinance of the City of Burlington pursuant to 24 V.S.A. chapter 91, subchapter 7.

This required showing has also not been made by the defendants in the case now before us. Absent such showing, the powers and duties of the building inspector remain those provided in Chapter 69 of Title 24, §§ 3101–3118. Nowhere within these sections can there be found the authority

for a building inspector to deny a building permit solely because he is aware that amendments to applicable zoning ordinances will be considered in the future. Whether a building inspector acquires such a power if he is appointed the administrative officer pursuant to 24 V.S.A. § 4442 is not a question now before us.

Two days after reissuance of the permits was denied, on February 22, 1973, the plaintiff petitioned the Chittenden County Court for a declaratory judgment and further equitable relief under 12 V.S.A. §§ 4711–4725. The normal route to be taken by a person aggrieved by an order of a building inspector is an appeal to a board of arbitrators or to the district court. 24 V.S.A. § 3107. However, "a proceeding for a declaratory judgment may be maintained, where a controversy exists, even though another remedy is available." *Flanders Lumber & Building Supply Co.* v. *Town of Milton,* 128 Vt. 38, 44, 258 A.2d 804 (1969). As the statutes which should have governed the actions of the parties below are found in Chapter 69 of Title 24, and not in Chapter 91, 24 V.S.A. § 4472 negates neither our jurisdiction nor that of the county court. *Cf. Fisher* v. *Town of Marlboro,* 131 Vt. 534, 310 A.2d 119 (1973).

In his petition the plaintiff asked the court below to find that 24 V.S.A. § 4443(c) was inapplicable. The Court below so found and we affirm. Plaintiff also asked the lower court to rule that he had acquired a vested right in the building permits, that his actions subsequent to the permits' initial issuance constituted such a change of position on his part in reliance on them that their reissuance should be mandated. The lower court accepted his argument and found in his favor.

We feel that it was appropriate for the lower court to consider the vested rights issue. 12 V.S.A. § 4716 provides: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." To have merely ruled that the building inspector improperly denied the building permits and then sent the parties back to start again

would, at worst, have created uncertainty and controversy and, at best, have delayed for a short time only determination of the vested rights issue.

■ Lacking an adjudication that he had acquired a vested right, the plaintiff could have been denied reissuance of the building permits by the building inspector under 24 V.S.A. § 3105. This section empowers a building inspector to deny a building permit when its issuance would contravene existing zoning ordinances. *Wright* v. *Preseault, supra,* 306 A.2d at 679. Assuming that the amendments of August 5, 1971, discussed above, were valid, they would serve as a bar, absent a vested right. So also would the amendments that were only in the proposal stage on February 20 after they became effective on April 26, 1973.

Furthermore, before the county court heard arguments on plaintiff's petition, the Burlington City Council, after notice and hearing, had denied the permits and ruled that the plaintiff had not acquired a vested right in them. Whether the Burlington City Council or the board of aldermen (the two bodies are referred to interchangeably in the briefs and record) is the "legislative body of the municipality" of 24 V.S.A. § 4443(c), defined in 24 V.S.A. § 4303(2), is immaterial since 24 V.S.A. § 4443(c) was inapplicable. However, if the county court had not decided the vested rights issue, it is quite possible that the city council's ruling would have influenced the building inspector's decision the next time the plaintiff appeared before him. For all of the above-mentioned reasons, we believe it entirely appropriate that the county court ruled on the vested rights issue.

We turn now to the question of whether the county court's holding that the plaintiff had acquired a vested right in the building permits was correct.

If there were no limit to the duration of a building permit, a municipality would be hindered in its attempt to control the use and development of land in the face of changing conditions. A developer could do nothing, in effect could sit on his permit, and subsequently commence construction distasteful to, and long proscribed by, the municipality.

On the other hand, a permittee who has done various acts after obtaining the permit should not see his efforts automat-

ically deemed worthless when the municipality amends its zoning ordinances so that his project is nonconforming. The issue thus, as is so often the case, becomes one of linedrawing; what acts are essential in order for a right in a building permit to vest?

As mentioned above, and found below, the plaintiff has not commenced construction. He has constructed a retaining wall on the shore of Lake Champlain and has incurred architectural, surveying, and legal expenses.

However, rather than sitting on his permit, the plaintiff, through counsel, has spent a substantial amount of time sitting and standing in courtrooms in the State of Vermont, trying to maintain the foothold he obtained during the short period of time when the City of Burlington approved of his development project. The first decision below in the case of *In re Preseault, supra,* occurred on June 8, 1971. *Id.* 130 Vt. at 345. That decision followed hearings held prior to that date. This Court remanded when that controversy reached us, and the plaintiff asserts that litigation since that remand continues. The petition to enjoin the plaintiff from building the duplexes was brought by the adjacent landowners on June 21, 1971. *Wright* v. *Preseault, supra,* 306 A.2d at 675. This Court's decision in plaintiff's favor came on July 11, 1973, when it denied motion for reargument. *Id.* 306 A.2d at 673.

■ Vermont case law is silent on the precise issue now before us. We conclude that the more soundly reasoned cases from other jurisdictions support the proposition that where a valid permit is issued for a specified period, and where actual construction is delayed by litigation, involving parties who have standing to oppose construction, past that time, a permittee otherwise proceeding in good faith is entitled to reissuance of that permit, even where the zoning was meanwhile changed so that the project is nonconforming. See, *e.g., Belfer* v. *Building Commissioner of Boston,* 294 N.E.2d 857, 860 (Mass. 1973); *Shelburne, Inc.* v. *Roberts,* 43 Del. Ch. 485, 238 A.2d 331, 340 (1968); *Woods* v. *City of Newton,* 351 Mass. 98, 217 N.E.2d 728, 733 (1966); *Krekeler* v. *St. Louis County Board of Zoning Adjustment,* 422 S.W.2d 265 (Mo. 1967).

The case of *Town of Mendon* v. *Ezzo,* 129 Vt. 351, 278 A.2d 726 (1971), does not preclude our decision that the

plaintiff now before us has a vested right. In that case we held that the acts of the developer during the early summer of 1969 prior to the town's adoption of interim zoning were not sufficient, as they consisted merely of preparing the premises for construction. *Id.* 129 Vt. at 361. However, the developer had not been delayed by litigation contesting the issuance or nonissuance of a permit necessary before construction could begin; the delay in commencing construction was voluntary delay.

For this jurisdiction to employ a test under which a permittee must begin actual construction within one year and, at the same time, to not allow delay caused by litigation to serve as a modifying or exculpatory factor would produce greater inequity than in most other jurisdictions. This State recently established itself as a leader in enacting standards for controlling land development. Act No. 250 of the Public Acts of 1969 (Adj. Sess.), now codified as 10 V.S.A. §§ 6001, *et seq.,* became effective on April 4, 1970.

As a consequence, the plaintiff had to obtain, in addition to the approval of the Burlington Planning Commission and the building inspector, an environmental permit, commonly called an Act 250 permit, from a State agency before he could begin construction. 10 V.S.A. § 6081(a). He would have been subject to fine or imprisonment if he commenced construction lacking such a permit. 10 V.S.A. § 6003. Any construction commenced by the developer prior to issuance of all the necessary permits and prior to a final judicial determination of the validity of the initial issuance of these permits is commenced at his peril.

The defendants argue that the litigation which resulted in *In re Preseault, supra,* because concerned with the Act 250 permit, should not be relevant with respect to whether the plaintiff has a vested right in the building permits. But when viewed from the standpoint of ability to commence construction, we cannot agree that the required procedures to obtain State and municipal permits should be considered entirely separate and distinct. The Legislature was well aware of the interrelationship between State and municipal permits. 10 V.S.A. § 6086(a)(10), (d). Act 250 permits are also limited in duration to a year. 10 V.S.A. § 6091(b). For this Court to hold that a developer, proceeding as expeditiously

as possible, must be denied reissuance of the permit he first applied for and received solely because his application for a second essential permit resulted in litigation of more than a year's duration would go beyond the desired and worthwhile goal of controlling development. Such a holding would make development a pure gamble; success would depend on the whim of adversaries to litigate or not. This result would contravene our announced policy that a good faith developer should be able to proceed with assurance. *Wright* v. *Preseault, supra,* 306 A.2d at 677; *Graves* v. *Town of Waitsfield,* 130 Vt. 292, 295, 292 A.2d 247 (1972).

■■ The defendants also contend that, since the plaintiff's adversaries in *Wright* v. *Preseault, supra,* were adjacent landowners rather than the town or its officials, they should not be prevented from denying reissuance of the building permits. Accepting this argument would also make development a gamble; success would depend on the whim of potential adversaries, other than the municipality, who had standing to litigate or not. Further, the proper focus with regard to the vested rights issue is on whether the plaintiff was impeded by forces or events which opposed his good faith, expeditious efforts, or whether the delay or abandonment was voluntary. To find that a developer has a vested right it is not necessary that his opponents be identical throughout the period involved. See *Texas Co.* v. *Town of Miami Springs,* 44 So.2d 808 (Fla. 1950) and *Trans-Oceanic Oil Corp.* v. *City of Santa Barbara,* 85 Cal.App.2d 776, 194 P.2d 148, 156 (1948) (delay caused by wartime regulations).

The other arguments advanced by the defendants, with supporting case law from other jurisdictions, on the vested rights issue need not be discussed. They, as well as our own *Town of Mendon* v. *Ezzo, supra,* would be relevant if all permits had been issued and litigation had not resulted, but are not so in light of our disposition of this case.

*For the reasons stated herein, the judgment of the Chittenden County Court that the plaintiff is entitled to reissuance of the building permits is affirmed.*