## In re McDonald's Corp.

[505 A.2d 1202]

No. 82-516

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed December 6, 1985

*Marion T. Ferguson* and *Allen R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Merideth Wright*, Assistant Attorney General, Montpelier, for Appellee.

**Hayes, J.** Plaintiff McDonald's Corporation (McDonald's) appeals from a declaratory ruling by the Vermont Environmental Board (Board) which determined that McDonald's was required to obtain an Act 250 land use permit, pursuant to 10 V.S.A. § 6081(a), for a proposed restaurant to be located at 195 Woodstock Avenue in the City of Rutland.

McDonald's contends 1) that the Board was estopped from ruling that an Act 250 permit was required, and 2) that it had a vested interest in construction of the project at the time the petition for declaratory ruling was filed. We disagree and affirm.

A chronology of events facilitates an understanding of the case. In the summer of 1981, McDonald's began negotiations for the purchase of three parcels of land on Woodstock Avenue in Rutland, Vermont. On April 8, 1982 two parcels were purchased outright and a lease with an option to buy was obtained on the third. The total acreage involved was over 1.8 acres, and the area to be developed was slightly in excess of one acre.

On July 16, 1981, prior to purchasing the land on which the restaurant in question was to be constructed, McDonald's obtained from District Number One Environmental Coordinator Brown an advisory opinion that an Act 250 permit was not required because Rutland City had zoning and subdivision regulations. Where a city has permanent zoning and subdivision bylaws, an Act 250 permit is only required for commercial development in excess of ten acres. In a municipality without valid permanent zoning and subdivision bylaws, on the other hand, Act 250 jurisdiction is triggered by commercial development involving one acre or more. 10 V.S.A. § 6001(3).

On March 8, 1982, a project review sheet was issued by the regional engineer of the Agency of Environmental Conservation, which indicated that no Act 250 permit was required by McDonald's. The regional engineer, however, is not responsible for Act 250 jurisdictional decisions.

In April of 1982, about one week after McDonald's purchased the subject real property, neighboring landowners filed a petition for a declaratory ruling with the Environmental Board, contending that an Act 250 permit was required because the proposed restaurant was a commercial development of over one acre in a municipality without permanent subdivision bylaws. The petitioners maintained that the Rutland City ordinance on subdivisions did not meet the standards set forth in the Vermont Plan-

ning and Development Act, 24 V.S.A. ch. 117, and was therefore invalid.

McDonald's had notice of the petition for a declaratory ruling filed by the neighboring landowners and, on April 28, 1982, moved to dismiss it. While the petition for declaratory relief was pending, and before the Board had ruled on McDonald's motion to dismiss, McDonald's began construction on June 10, 1982. The motion to dismiss was denied by the Environmental Board on July 13, 1982. On July 21, 1982, McDonald's filed a motion for permission to appeal to the Vermont Supreme Court pursuant to V.R.A.P. 5(b), which was denied by the Board.

McDonald's opened its restaurant for operation several weeks before the Board issued the declaratory ruling which is the subject of this appeal. The Board ruled that the City of Rutland's subdivision bylaws had not been amended to conform to 24 V.S.A. ch. 117 and, thus, had become void. The Board also held that since McDonald's development exceeded one acre, an Act 250 permit would be required.

I.

■ McDonald's contends that the Environmental Board was estopped from ruling that an Act 250 permit was required. "Estoppel is not a defense that should be readily available against the state, but neither is it a defense that should never be available." *Foote's Dixie Dandy, Inc.* v. *McHenry*, 270 Ark. 816, 822, 607 S.W.2d 323, 325 (1980). Estoppels against the government are rare and are to be invoked only in extraordinary circumstances. The state, however, "may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and . . . the injustice which would result from a failure to uphold an estoppel is of sufficient dimensions to justify any effect upon public interest or policy which would result from the raising of an estoppel." *Chaplis* v. *County of Monterey*, 97 Cal. App. 3d 249, 258, 158 Cal. Rptr. 395, 400 (1979) (quoting *City of Long Beach* v. *Mansell*, 3 Cal. 3d 462, 496-97, 91 Cal. Rptr. 23, 48 (1970)).

■ The parties agree that the elements of equitable estoppel, as set forth in *Town of Bennington* v. *Hanson-Walbridge Funeral Home, Inc.*, 139 Vt. 288, 427 A.2d 365 (1981), are applicable to the present case. Those elements are:

(1) [t]he party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the true facts; *and*

(4) he must rely on the former's conduct to his injury.

*Id.* at 293-94, 427 A.2d at 369 (quoting *Rosenthal* v. *National Life Insurance Co.,* 486 F. Supp. 1018, 1023 (S.D.N.Y. 1980)) (emphasis added); see also *Fisher* v. *Poole,* 142 Vt. 162, 168, 453 A.2d 408, 412 (1982) (elements of equitable estoppel and its rationale set forth). Furthermore, we have recognized that "[o]ne who invokes the doctrine of equitable estoppel has the burden of establishing *each* of its constituent elements." *Fisher, supra,* 142 Vt. at 168, 453 A.2d at 411 (emphasis added). With these standards in mind, we turn to the facts of the present case.

The advisory opinion issued by the district coordinator states in part, "Rutland City has zoning and subdivision regulations, thus, must be ten acres of land for commercial jurisdiction under 250." This opinion, however, was issued without the knowledge that the subdivision regulations of the City of Rutland did not comply with the provisions of the Vermont Planning and Development Act, 24 V.S.A. ch. 117, and were therefore void. Moreover, the second project review sheet was issued by the regional engineer of the Agency of Environmental Conservation, who had no responsibility for Act 250 jurisdictional decisions.

It is uncontroverted that McDonald's began construction on this project knowing that a question of jurisdiction had been raised in the petition for declaratory ruling and continued construction after the Environmental Board had denied its motion to dismiss and request for an interlocutory appeal.

The district coordinator's lack of knowledge about the invalidity of Rutland's regulations is analogous to the factual situation in *Hanson-Walbridge* where this Court declined to apply the doctrine of equitable estoppel. In that case, the zoning administrator issued a zoning permit to a funeral home for the installation of a "pathological incinerator," not knowing of its intended use for human cremation. *Hanson-Walbridge, supra,* 139 Vt. at 291-92, 427 A.2d at 367-68. The Court granted injunctive and declaratory relief against the funeral home's operation of the crematory. *Id.* at 296, 427 A.2d at 370-71.

■ Because the district coordinator did not know that Rutland's subdivision regulations were void. at the time he issued his advisory opinion, and that Rutland was a one-acre municipality rather than a ten-acre municipality for purposes of Act 250, it cannot be said that the first element of equitable estoppel is present in this case, that is, "[t]he party to be estopped must know the facts." *Id.* at 293, 427 A.2d at 369.

■ This case is distinguishable from our decision in *My Sister's Place* v. *City of Burlington*, 139 Vt. 602, 433 A.2d 275 (1981). In *My Sister's Place*, an agent of the the City of Burlington gave to plaintiff's agents a list of *specific* improvements necessary to meet fire code requirements for opening a restaurant, thus negligently leading plaintiff's agents into believing that the restaurant could be operated after certain renovations were completed. In the instant case, Environmental Coordinator Brown merely gave to McDonald's an *advisory* opinion that an Act 250 permit was not required. Also, in issuing the project review sheet to McDonald's, the regional engineer of the Agency of Environmental Conservation merely indicated that no Act 250 permit was required. More importantly, because the regional engineer is not responsible for Act 250 jurisdictional decisions, the information he gave to McDonald's concerning the need for an Act 250 permit was beyond his power and authority.

The State contends that McDonald's should not have proceeded with construction knowing that Act 250 jurisdiction had been placed at issue in a declaratory ruling proceeding. We agree. As was stated in *Hanson-Walbridge*, "[c]ourts will not predicate an estoppel in favor of one whose own omissions or inadvertence contributed to the problem." *Hanson-Walbridge, supra*, 139 Vt. at 294, 427 A.2d at 369.

## II.

McDonald's also contends that it had a vested interest in the project at the time the petition for declaratory ruling was filed. The Environmental Board concluded that McDonald's could not have a vested right in the project prior to obtaining a final judicial determination of the validity of the initial issuance of its building permits. The Board relied on *Preseault* v. *Wheel*, 132 Vt. 247, 315 A.2d 244 (1974), which states that "[a]ny construction commenced by the developer prior to issuance of all the nec-

essary permits and prior to a final judicial determination of the validity of the initial issuance of these permits is commenced at his peril." *Id.* at 254, 315 A.2d at 248.

McDonald's asserts that *Preseault* requires this Court to conclude that it had vested rights in the project, arguing that it behaved reasonably in relying on the opinion of the district coordinator and proceeding with construction. The State correctly points out that the declaratory ruling proceeding was de novo with the Environmental Board and the Board could (and did) take a different view from that of the district coordinator. We hold that McDonald's acted at its own risk when it went forward with construction with full knowledge that Act 250 jurisdiction had been placed at issue in a declaratory ruling proceeding before the Environmental Board.

Long ago Justice Holmes remarked: "Men must turn square corners when they deal with the Government." *Rock Island, Arkansas & Louisiana R.R.* v. *United States*, 254 U.S. 141, 143 (1920). Likewise, government should be held to a similar standard when dealing with its citizens. We find no departure from rectangular rectitude in this case.

For the reasons stated herein, the declaratory ruling of the Environmental Board must be upheld.

*Affirmed.*