## In re McCormick Management Co., Inc.

[547 A.2d 1319]

No. 86-140

Present: **Allen, C.J., Peck, Dooley and Mahady, JJ., and Keyser, J.
(Ret.), Specially Assigned**

Opinion Filed February 12, 1988

Motion for Reargument Denied February 12, 1988

*Spokes, Foley & Stitzel*, Burlington, for Plaintiff-Appellee.

*Biggam & Fox*, Montpelier, for Defendant-Appellant.

**Dooley, J.** This is a zoning case in which the trial court declared that the zoning ordinance of the Town of Richmond (here-

inafter the Town) is invalid for failure of the Town to adopt a prior town plan. In addition, the court held that the plaintiff, Mc-Cormick Management Company (hereinafter McCormick), held vested rights in its development plan because of the filing of the plan by its predecessor in title before the Town adopted an interim zoning ordinance. Under either theory, the court held that McCormick was entitled to a permit for its single family housing development despite the fact that the lots did not comply with the one acre minimum lot size requirement contained in the Richmond zoning ordinance. The Town appeals. We reverse and hold that neither theory entitles the plaintiff to a permit.

The permit application involves the Cote Subdivision, so called, in the Town of Richmond. On July 25, 1968, Phillippe Cote filed with the clerk of the Town a subdivision plat showing his property being divided into 81 residential lots. There are actually two types of lots on the subdivision. Those numbered 47 through 81 are large residential lots; those numbered 1 through 46 are very small residential lots, apparently of a size to fit a mobile home or a house of similar size. The plat was too large to be put in the land records. As a result, the clerk stamped, dated and signed the original, put it in her safe and requested that Mr. Cote supply a smaller copy for recording. That evening, the Town selectmen adopted an interim zoning ordinance, the first zoning ordinance for the Town.

Some two months later, Mr. Cote supplied the reduced version of the plat, and it was recorded in the land records. Mr. Cote started to develop the subdivision, building roads, installing utilities and selling lots. By December of 1982, 33 of the 35 large residential lots were developed with houses. Mr. Cote sold the remainder of the land to McCormick at that time. In April of 1983, McCormick applied for a zoning permit to build single family houses on the small lots numbered 1 through 46. The permit was denied because the size of the lots was too small to conform to the requirements of the town zoning ordinance.

On appeal from the denial, the trial court held that the filing of the subdivision plat by Mr. Cote prior to the enactment of the first zoning ordinance in the Town exempts the subdivision from any zoning regulation. As an alternative, it held that the zoning ordinance did not comply with the enabling law, apparently, because there was no preexisting town plan. Pursuant to 24 V.S.A. § 4491(c), such a nonconforming ordinance was valid for only 7

years from its adoption. On finding that the relevant ordinance was adopted in 1970, the court held that the ordinance expired in 1977 and could not serve as the basis for a denial of a permit to plaintiff in 1983. In essence, the court ruled that the Town had no valid zoning from 1977 on.

The Town contests both alternative theories, arguing that a subdivision filing on the day of the adoption of a zoning ordinance and in anticipation of the ordinance creates no vested right to develop in accordance with the subdivision plan.[1] Second, the Town argues that certain savings statutes validate the Town ordinance despite any defects in its adoption, and, in any event, plaintiff's attack on the ordinance was barred by the applicable statute of limitations. We take these issues in order.

■ McCormick's vested rights theory is based almost exclusively on *Smith* v. *Winhall Planning Commission*, 140 Vt. 178, 436 A.2d 760 (1981). In *Smith*, the plaintiff had applied for approval of a subdivision and was denied. During the review process, the town amended the zoning ordinance of the town in a way that clearly prohibited plaintiff's proposed subdivision development. In this Court, the town argued that the new ordinance applied. This Court rejected that argument and held that plaintiff had a vested right to develop in accordance with his subdivision plan if it was lawful at the time the permit application was made. In doing so, we adopted the minority rule that rights vested "under the then existing regulations as of the time when proper application is filed . . . ." *Id.* at 181, 436 A.2d at 761. The holding is based in part on the policy considerations of certainty in the law and its administration and avoidance of the litigation a more complicated rule would engender and in part on the command of 1 V.S.A. § 213 that law changes do not "affect a suit begun or pending at the time of their passage." *Smith* emphasized a statement in *In re Preseault*, 132 Vt. 471, 474, 321 A.2d 65, 66 (1974), that because of 1 V.S.A. § 213 " 'the intervening adoption of a master plan is, by itself, ineffective to derail proceedings validly brought and pursued in good faith to implement

---

[1] In view of our disposition, we do not reach the following components of the Town's argument: (1) a filing after a proposed zoning ordinance is waived cannot create vested rights; (2) a filing on the same day as the adoption of the ordinance is not prior to the adoption of the ordinance; and (3) McCormick's filing of an oversize plat cannot be considered a formal filing that creates vested rights. We express no opinion on these arguments.

rights available under previous law.' " *Smith*, 140 Vt. at 182, 436 A.2d at 762.

The circumstances in this case are very different from those present in *Smith*. Here, McCormick claims vested rights from the act of filing a subdivision plat before the Town adopted any zoning. Clearly, 1 V.S.A. § 213 and its analysis in *Preseault* have no application to this case. Further, we believe the policy considerations are different from those present in *Smith*. Finally, in this case, unlike *Smith*, the legislature has dictated how those policy considerations should apply.

A good starting point for our analysis is an earlier opinion in the *Preseault* litigation entitled *Preseault* v. *Wheel*, 132 Vt. 247, 315 A.2d 244 (1974). In that case, the developer had been issued a building permit but did not start construction within a year because of appeals by adjoining landowners. The building permit was good for only a year and had to be renewed thereafter. Meanwhile, the city had changed its zoning ordinance so that the development did not comply with the new law. The building inspector refused to renew the permit because of the change in the zoning law, and the developer sued for the renewed permit alleging that he had a vested right to it. The Court saw itself as drawing a line between competing considerations:

> If there were no limit to the duration of a building permit, a municipality would be hindered in its attempt to control the use and development of land in the face of changing conditions. A developer could do nothing, in effect could sit on his permit, and subsequently commence construction distasteful to, and long proscribed by, the municipality.
>
> On the other hand, a permittee who has done various acts after obtaining the permit should not see his efforts automatically deemed worthless when the municipality amends its zoning ordinances so that his project is nonconforming.

*Id.* at 252-53, 315 A.2d at 247.

The Town's interest here is great. The subdivision plat involved was filed in 1968, some fifteen years before the permit was sought. During that time, land uses within the Town may have changed dramatically so that the proposed uses would be wholly incompatible with surrounding users. As this Court stated in *Ver-*

*mont Brick & Block, Inc.* v. *Village of Essex Junction,* 135 Vt. 481, 483, 380 A.2d 67, 69 (1977):

> A prime purpose of zoning is to bring about the orderly physical development of the community by confining particular uses to defined areas. Nonconforming uses are inconsistent with that purpose and are tolerated only because they are antecedent to the zoning regulation. A goal of zoning is to gradually eliminate these uses.

(citations omitted).

On the other hand, the developer in this case has done little in reliance on the development scheme. While Cote developed some of the lots, McCormick received a large plot of land that is divided only on paper. McCormick has had to make no investments to protect its interests. The fifteen-year time lapse between the filing of the plat and the development was not caused by external factors beyond the control of Cote or McCormick.

The legislature has acted to balance these considerations and establish a policy on subdivisions that are alleged to preexist zoning and subdivision regulation. 24 V.S.A. § 4401(b)(2) authorizes a municipality to adopt subdivision regulations and "approve the development of such plats previously filed in the office of the clerk of such municipality *if such plats are entirely or partially undeveloped, under the subdivision regulations of such municipality.*" This is an authorization for the town to subject preexisting plats to current subdivision regulation to the extent they remain undeveloped. Obviously, this authority would be meaningless if we were to adopt the expansive theory of vested rights asserted by McCormick. It is particularly appropriate to apply the statute where, as here, the lots that remain undeveloped differ greatly in size from those which have already been developed and are physically separate from, although contiguous to, the developed lots.

Similarly, 24 V.S.A. § 4406(1) requires that municipalities allow the development of existing small lots — that is, those below minimum lot size requirements — only when the lot is "in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of any zoning regulation . . . ." See *LeBlanc* v. *City of Barre,* 144 Vt. 369, 372, 477 A.2d 970, 971-72 (1984). The legislative policy would be wholly undermined by a vested rights rule that protected preex-

isting small lots that are in affiliated ownership from surrounding lots.

■ Finally, the legislature has adopted a detailed statute on nonconforming uses and structures that allows for the phasing out of nonconforming uses. See 24 V.S.A. § 4408. Our decisions on the use of land prior to the initiation of zoning equate the doctrine of vested rights with the protection accorded prior nonconforming users. For example, in *Town of Mendon* v. *Ezzo*, 129 Vt. 351, 360, 278 A.2d 726, 731 (1971), the Court held that the vested right to develop could be no greater than the extent of the prior nonconforming use. In *Town of Chester* v. *Country Lounge, Inc.*, 135 Vt. 165, 167, 375 A.2d 414, 415 (1977), the Court stated: "Nor does a planned or intended use without substantial improvement of the premises give the defendant rights." McCormick's theory of vested rights would, in fact, mean that an intended use alone with no further improvement of the premises would create an immutable right to develop consistent with the intention. It would wholly undermine the statutory treatment of nonconforming uses.

Based on the above analysis, we hold that a land owner acquires no vested rights prior to the enactment of a zoning ordinance other than those expressly granted by the relevant statutes as detailed above. This holding is consistent with the better reasoned decisions from other states. See *Sherman-Colonial Realty Corp.* v. *Goldsmith*, 155 Conn. 175, 230 A.2d 568 (1967); *Blevens* v. *City of Manchester*, 103 N.H. 284, 170 A.2d 121 (1961); *Lake Intervale Homes, Inc.* v. *Township of Parsippany-Troy Hills*, 28 N.J. 423, 147 A.2d 28 (1958). In reaching this result, we do not intend to overrule *Smith* v. *Winhall Planning Commission* but simply to rule that it does not apply where the asserted vested right precedes the adoption of a zoning ordinance. In cases like these there is no application or permit process to create such a vested right.

■ The second ground on which the trial court found that McCormick was entitled to prevail was the invalidity of the zoning ordinance. This issue requires further facts as well as an overview of the statutory scheme. The Town adopted interim zoning on July 25, 1968. In March of 1970, the Town adopted a permanent zoning ordinance without first adopting a town plan. In 1973, the Town adopted a town plan.

Both parties seem to agree that the order of adoption of the plan and the permanent zoning ordinance was reversed from what

the law required. In 1968, the legislature adopted a new statutory scheme for planning and zoning. See Acts of 1967, No. 334 (Adj. Sess.). The law was effective on March 23, 1968 just before the Town adopted interim zoning. Under 24 V.S.A. § 4401(a) as added by that act, only a municipality "which has adopted and has in effect a plan . . . may implement the plan by adopting, amending and enforcing any or all of the [zoning] bylaws . . . ." *Id.* The statute required that all zoning bylaws "have the purpose of implementing the plan, and shall be in accord with the policies set forth therein." *Id.* Our law is that because zoning ordinances are in derogation of common law property rights strict compliance with established procedures is required. *Kalakowski* v. *Town of Clarendon*, 139 Vt. 519, 522, 431 A.2d 478, 479 (1981). Therefore, unless there are relevant savings provisions, the permanent zoning ordinance of the Town did not comply with 24 V.S.A. § 4401(a) and would be invalid. See *Flanders Lumber & Bldg. Supply Co.* v. *Town of Milton*, 128 Vt. 38, 46, 258 A.2d 804, 809 (1969) (subdivision ordinance invalid for lack of a prior plan).

In fact, the 1968 law contained a number of savings provisions primarily to deal with prior inconsistent ordinances. One of these — enacted as 24 V.S.A. § 4491(c) — covered a municipality which had appointed a zoning commission and was preparing a zoning ordinance prior to the effective date of the act. The Town in this case fits in this category. Section 4491(c) allowed it to adopt a noncomplying ordinance to be effective for five years from adoption as long as it did so prior to July 1, 1969 — later changed, by Acts of 1969, No. 116, § 11, to July 1, 1970. The Town in this case availed itself of this authorization.

All of the foregoing is agreed to by the parties, but at this point their positions diverge. McCormick argues that the Town's March, 1970 ordinance was kept alive for 5 years, and later for two more years when the statute was amended, by virtue of 24 V.S.A. § 4491(c) but thereafter became invalid because no other savings provision applies.[2] The trial court accepted this argument. It held that no other savings provision applies because the others — 24 V.S.A. §§ 4491(a) and (b) — applied only to situations where a municipality adopted a zoning ordinance prior to the effective date of the new law, March 23, 1968.

---

[2] Both parties agree that the seven year limit applied to the 1970 permanent zoning ordinance rather than to the 1968 interim zoning ordinance.

The Town relies primarily on a statute of limitations argument. It argues any attack on the ordinance is barred by the applicable statute of limitations contained in 24 V.S.A. § 4494(b). That provision states that a person cannot "challenge for purported procedural defects the validity of any plan or bylaw as adopted, amended or repealed under this chapter after two years following the day on which it would have taken effect if no defect had occurred."

We do not reach the statute of limitations argument advanced by the Town. We hold that the trial court was incorrect in its holding that no other savings provision applies to the Town ordinance. We hold that the zoning ordinance is validated by § 4491(b), despite the durational limit of § 4491(c).

Three canons of statutory construction are relevant to our analysis. They are stated in *State* v. *Harty*, 147 Vt. 400, 402, 518 A.2d 30, 31 (1986), as follows:

> Our primary objective in interpreting statutes is to give effect to legislative intent. We presume that the plain, ordinary meaning of statutory language is intended. Before relying on the plain meaning rule, however, we must read together statutes in pari materia, that is, dealing with the same general subject matter, and construe them as parts of a unified statutory system.

(citations omitted). When the three canons are applied to this case, the Town's ordinance is validated by 24 V.S.A. § 4491(b).

When the legislature adopted the 1968 law, it created three savings provisions. The first — § 4491(a) — saves preexisting zoning ordinances and is not applicable here. It gave towns a five, later seven, year period to come into total compliance with the new law or, failing that, the ordinance would expire. The third — § 4491(c) — as discussed above saved the work in progress on an ordinance by allowing it to be completed and be effective for five, now seven, years. The second provision is somewhat more limited. It provides:

> (b) Any municipality which has adopted zoning ordinances, subdivision regulations, or any ordinance or regulation similar to a bylaw authorized by this chapter may continue to enforce such regulations and ordinances and exercise such powers for a period of seven years following

the effective date of this chapter. On the expiration of such period, such municipality shall no longer enforce any regulation or ordinance or exercise such powers unless a plan has been adopted and a planning commission has been appointed in accordance with the provision of this chapter.

24 V.S.A. § 4491(b).

Based on its plain meaning, § 4491(b) covers the circumstances in this case. In 1970, the Town adopted a zoning ordinance "similar to a bylaw authorized by this [statute]."[3] *Id.* Thus, under the first sentence of § 4491(b), the ordinance could be enforced for seven years from March, 1968 — that is, up to March, 1975. Under the second sentence of § 4491(b) the ordinance can continue after that date only if the municipality has adopted a plan in accordance with the chapter. In this case, the Town adopted such a plan in 1973 before the expiration of the ordinance. Thus, the ordinance continues to be valid and McCormick's attack fails.

The trial court held that § 4491(b) could not apply because it required that an ordinance be adopted prior to the new law. The statute does not say that directly. On the other hand, § 4491(a) applies to ordinances "enacted under . . . prior enabling laws" or to "any previously enacted zoning ordinance," demonstrating that the draftsman had in mind how to state clearly that a provision applied only to ordinances adopted prior to March, 1968. Reading the provisions together as we must, we cannot say that § 4491(b) applies only where there was in existence a zoning ordinance prior to the passage of the new zoning law.

We also think that the trial court's construction is inconsistent with the intent of the legislation. Given the coverage of §§ 4491(a) and (c), subsection (b) serves only a very narrow purpose — to save ordinances where the plan was adopted after the zoning ordinance. The need for this must be understood in light of existing law. Under 24 V.S.A. § 3001 as added by Act of 1963, No. 166, § 1 (now repealed and superseded), the statute as it existed on the effective date of 24 V.S.A. § 4491(b) defined a plan as "a zoning ordinance prior to adoption." Under the 1968 law, the plan is a separate municipal development plan. See 24 V.S.A. § 4303(1) as added by Acts of 1967, No. 334, § 1 (Adj. Sess.). Thus, inevitably

---

[3] While the trial court made no finding on this point, McCormick made no other challenge to the ordinance and thus waived any other defects that would make the ordinance dissimilar to the requirements of the 1968 law.

municipalities that had adopted zoning or begun the process under prior law would have an ordinance without a prior separate plan. Section 4491(b) was adopted to save these ordinances as long as the municipality subsequently adopted the plan. For this purpose, there was no logical reason to distinguish between a municipality that had adopted an ordinance on March 23, 1968 and one that was in the process. Indeed, it is clear that if the Town in this case had adopted the identical zoning ordinance in 1973 following the adoption of the plan, McCormick's challenge would disappear. It is exactly this kind of unnecessary act that § 4491(b) was intended to avoid.

McCormick is not entitled to a permit for its development under either of the theories accepted by the trial court. Accordingly, the order of the court granting it a permit must be reversed and its action dismissed.

*Reversed.*