STATE OF VERMONT

ENVIRONMENTAL COURT

|                      |   |                          |
|----------------------|---|--------------------------|
| Town of Barnard      | } |                          |
|                      | } |                          |
| v.                   | } | Docket No: 228-12-98 Vtec |
|                      | } |                          |
| Carroll Rhoades and  | } |                          |
| Cynthia Rhoades      | } |                          |
|                      | } |                          |

Decision and Order

The Town of Barnard brought an enforcement action against Defendants Carroll and Cynthia Rhoades, citing two violations: increasing the living space of the building by enclosing an existing porch, and converting a building from seasonal camp use to year-round dwelling use without a permit. The Town is represented by Joseph S. McLean, Esq.; Defendants are represented by James A. Martino, Esq. The Court determined on summary judgment that Defendants were precluded by 24 V.S.A. §4472 from contesting the violations, as they had not appealed the notices of violation, but that the nature and circumstances[1] of the violations would be considered by the Court in determining a penalty

---

[1]The summary judgment decision noted specifically that the Court may take these arguments into account in determining the appropriate remedy in this matter, even though both Defendants and the Court are bound by the unappealed notices of violation as to the existence of the violations. Town of Hinesburg v. Dunkling, 9 Vt. L. Week 101(1998); In re Cumberland Farms, Inc., 151 Vt. 59, 64 (1989), and advised the parties that, in the hearing on the remedy phase of this matter, we will consider the analysis in Town of Sherburne v. Carpenter, 155 Vt 126, 131-32 (1990) in fashioning an appropriate remedy.

in this matter.

After a period during which the parties discussed the possible resolution of this matter, an evidentiary hearing was held on the remaining issues of penalties in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. The Town does not seek any injunctive relief in this matter; it is seeking a penalty sufficient to reimburse it for its legal fees and costs of enforcement. Upon consideration of the evidence, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Defendants own property at the corner of Town Highway 3 and Town Highway 11, containing a two-bedroom dwelling used as a vacation home by their predecessors, who lived in Connecticut. Defendants' predecessors used the dwelling on weekends and whenever they could get up to Vermont throughout the year, including on weekends and vacation weeks in the winter. The structure is capable of being occupied in the winter and has sufficient water and sewage facilities for year-round use. The Barnard Zoning Regulations define "Vacation Dwelling/Seasonal Camps/Tents/Travel Trailers/Hunting Camps" all together as dwellings "not designed for primary residence use," and specifically, those "that do not have sufficient water and/or sewage facilities for year-round use."

Defendants purchased the property in 1995, and at some time before December 1, 1996 began to use the dwelling year-round. They allowed their son to live in the dwelling for a period of time, then rented it for approximately four months. For approximately the three years prior to trial, and continuing as of the date of trial, their daughter and her family have lived in the dwelling on a year-round basis. At some time before July 17, 1996, Defendants enclosed a former porch or carport (already having two sides and a roof) for use as living space. However, they also made other changes to the interior of the dwelling so that the dwelling was still a two-bedroom dwelling, with the same septic demand, after the enclosure was completed.

The Barnard Zoning Regulations require that a zoning permit be obtained before construction of a new structure, or the moving, rebuilding, expansion or extension of an existing structure. §II(K)(3). However, the Regulations specifically provide that "repairs, remodeling and renovation of any structure, provided that no dimension or use specified in

2

zoning is changed, may be carried out without a permit." §II(K)(2). The enclosure of the porch did not change any dimension or use specified in the zoning regulations.

The Barnard Zoning Regulations define "habitable space" as "space in a structure for living, sleeping, eating or cooking." However, the Regulations do not require a zoning permit for the conversion of space within an existing structure to "habitable space."

On or about July 17, 1996, the Zoning Administrative Officer issued a Notice of Violation to defendants for enclosing a porch "thereby increasing the habitable square footage of that structure without the required permit." The corrective measure required by the notice was to apply "for a Zone Permit and any other permits (possibly septic) that should have been acquired prior to the renovation/addition work." Defendant Carroll Rhoades visited the Zoning Administrative Officer within a few days of receipt of the July 1996 Notice of Violation, to state that he did not need a permit for the enclosure of the porch. He did not thereafter contact the Zoning Administrative Officer, and did not appeal the July 1996 Notice of Violation. The following day, he met with the Chair of the Selectboard, who informed him that he needed a permit for the enclosure of the porch. Over the course of several subsequent conversations, Defendant stated his intention to apply for the permit, but did not file the application until December 5, 1996.

The Zoning Administrative Office denied the 1996 permit application in early 1997 because Defendant had not applied for a septic permit. Defendants did not appeal the denial or appeal the ruling that a septic permit was required. Only after this Court ruled in May of 1999 that Defendants were therefore precluded from challenging the permit requirement, did Defendants apply for and obtain the septic permit.

On June 10, 1998, the Zoning Administrative Officer issued new notices of violation for both claimed violations. Because the 1998 Notices of Violation both stated that the date of the violation "shall be registered as June 10, 1998," we find that the 1998 notices superseded the 1996 notices for the purposes of calculating the duration of the violation. They gave Defendants an additional time for compliance under 24 V.S.A. §4444(a). Accordingly, for the purposes of calculating a penalty, we must measure from seven days after the 1998 Notices of Violation to the time that Defendants complied with the 1998 notices. Those notices required 1) that Defendants meet with the Selectboard that

3

evening, June 10, 1998; 2) that during that meeting the parties should "set a near future time frame" to acquire "all permits required" in conjunction with the "expansion" of the structure and its conversion "from a 'seasonal dwelling' to a 'year-round dwelling';" and 3) that Defendants apply for those permits within 7 days of the June 10, 1998 Selectboard meeting. Defendant attended the June 10, 1998 Selectboard meeting. Defendants did not apply for either the septic permit or the zoning permit within seven days of the meeting. The present enforcement case, seeking injunctive relief and penalties, was served in late November, 1998.

At some time in the "spring" of 1999, perhaps as a result of this Court's May 3, 1999 ruling, Defendants contacted the Town sewage officer responsible for issuing the septic permit. The sewage officer did not have time to supervise the soils testing until the fall of 1999, when the work was performed. At trial, the zoning administrative officer agreed that the delay from the spring to November of 1999 should not be attributed to Defendants. Defendants applied for the sewage permit on November 30, 1999 at which time it was recommended for approval by the septic officer. The plans were stamped as approved by the Selectmen on January 5, 2000.

Defendants promptly resubmitted the formerly-denied zoning permit application for approval on December 14, 1999, on the advice of the Town Clerk, based on the sewage officer's approval of the septic permit. The zoning administrative officer's policy has been to allow permit applicants to resubmit an application within the same calendar year as the original application, but this policy is not written or otherwise available to applicants. The zoning administrator took no action on Defendants' resubmitted application, because he had already denied it in 1996, but did not inform Defendants that they had to submit a new application. After Defendants inquired of the status of their application, he told them to submit a new application, which they did on March 29, 2000 and which he granted on April 11, 2000. Over the course of the four to five years during which the zoning administrative officer was involved with Defendant's property, he estimated that he worked approximately one full week on it. His rate of pay is $8 an hour. The Selectboard spent approximately four hours on this matter over the four-year period.

In In re McDonald's Corp.,146 Vt. 380, 385(1985), quoting Mr. Justice Holmes with

4

approval, the Vermont Supreme Court noted that citizens "must turn square corners when they deal with the Government. Rock Island, Arkansas & Louisiana R.R. v. United States, 254 U.S. 141, 143 (1920)," and stated that "[l]ikewise, government should be held to a similar standard when dealing with its citizens." Both parties have departed from that standard in this case, perhaps out of deep frustration with one another. However, that frustration is no excuse for Defendants to disregard notices of violation without contesting them on their merits. Similarly, that frustration is no excuse for the Zoning Administrative Officer to treat any citizens with arrogance of manner, nor to fail to notify them if attempted applications are incorrectly made or have to be refiled.

First, although we have ruled that Defendants in the present case may not contest the violations, their position on the merits of the violations was a reasonable one. Towns are free to regulate the conversion of seasonal to year-round residential uses, and to require a permit for that conversion, but because zoning regulations are construed strictly in favor of the landowner, towns must write their definitions and regulations so that it is clear that a permit is required for such conversion of use without any construction or physical additions to the structure, and so that a landowner can determine whether a particular use falls within the definition of seasonal or year-round.

The Barnard regulations define a seasonal residence as one which is "not designed for primary residence use," and specifically with reference to the adequacy of its water and sewage disposal systems. Because Defendants' dwelling was adequately heated and insulated to be used in the winter, even though it was in fact used as a vacation home, and because it had adequate sewage disposal and water systems, if the merits of this violation were before this Court, on the evidence presented we could not conclude that the dwelling was "not designed for primary residence use."

Further, the Barnard Zoning Regulations do not specifically require a permit for a change from vacation to primary use of a residence, without any change in the structure, especially when the former vacation use occurred year-round. The regulations require a permit for "land development" which is defined to include "any change in the use of any building." Defendants' building arguably remained in year-round residential use from before to after Defendants' purchase, and merely went from part-time year-round use to

5

full-time year round use.

Essentially, Defendants' violations must receive a penalty due to the fact that they neither contested the notices of violation nor complied with them, during the period from June 17, 1998 to the "spring 1999[2]" date when they first attempted to apply for the septic permit.

We conclude that that "Spring 1999" date was May 3, 1999, the date of this Court's ruling.

The systems for administering and enforcing a town's zoning regulations for the benefit of the public will not function if landowners can opt out of the system without either complying with the zoning system or contesting what they believe to be erroneous rulings. However, the amount of penalty in the present case should be mitigated due to the fact that Defendants ultimately qualified for the permits for which they applied, due to the fact that on the merits they arguably did not need the permits at all, and due to the fact that at least the following two segments of the delay were attributable to the Town: from "spring" to the late November 1999 date when the sewage officer was able to do the site inspection; and from December 14, 1999 to the March 2000 date when Defendants had to reapply on a new form for the zoning permit.

Accordingly, we conclude that the period of violation extended from June 17, 1998 to May 3, 1999, a period of 320 days. In recognition of the ambiguities in the regulations that may have made a permit unnecessary, and the monies expended by defendants on obtaining the septic permit, it is hereby ORDERED and ADJUDGED that Defendants should pay a penalty of one dollar per day of violation, for a total of $320.

Done at Barre, Vermont, this 29th day of December, 2000.

---

[2] In the absence of the specific date, we will use March 20, 1999, the first day of "spring," for this purpose.

6

_____
Merideth Wright
Environmental Judge

7