### COMMUNITY NATIONAL BANK and Newport Harbor Club Condominium Association v. STATE of Vermont

[782 A.2d 1195]

No. 00-268

September 7, 2001. Plaintiffs Community National Bank and Newport Harbor Club Condominium Association appeal from a superior court judgment in favor of defendant State of Vermont. Plaintiffs contend the trial court erroneously: (1) declined to extinguish the State's public trust interest in the subject property; (2) refused to equitably estop the State from asserting a public trust interest; and (3) made certain findings unsupported by the evidence. We affirm.

As found by the trial court, and established by the record evidence, the underlying facts are as follows. The Newport Harbor Club Condominiums were constructed in 1986 on filled lands that were once a part of Lake Memphremagog. Filling began in the late 1800's for the purpose of laying railroad tracks, and continued thereafter for the purpose of storing lumber. In 1985, John and Karen Stevens borrowed $90,000 from the Community National Bank to purchase the property. The title certificate prepared by their attorney noted that a substantial amount of the property had been created by filling, but that it was impossible to determine from the land records which portions had been filled.

In 1986, the Stevens constructed condominium units on the property. The following year, a prospective purchaser of a unit discovered through a title search an order of the Vermont Water Resources Board, dated November 13, 1969. The order authorized Raymond E. Blake, one of the Stevens's predecessors-in-title, to dredge a portion of the lake bottom and use it to fill shallow areas of the property adjacent to the shores of the lake for the purpose of constructing a boat house. The order specifically found that the proposed dredging, fill, and boat house would improve the waterfront area of the City of Newport, and would serve the public good, and further stated: "This order does not convey any title or interest to the land fill or to lands lying under public waters or waters affected, nor does it deprive the Board of the right to order the removal and restoration of the area affected. All privileges extended to the petitioner are subject to the ownership and title vested with the State of Vermont, and all such ownership and title shall remain with the State of Vermont."

The Water Resources Board order was brought to the attention of the Stevens's attorney, who sent a letter to the Agency of Environmental Conservation in December 1986. The letter noted the reservation of interest set forth in the 1969 order, and inquired whether the order could be amended to make it clear that the State did not object to the existence of the condominium units in their present location. Reginald LaRosa, then chief of operations for the Department of Water Resources and Environmental Engineering, responded to the attorney's letter several weeks later. LaRosa indicated in his response that, based on a review of the materials submitted by Blake, "no lands and fill were established by the work done by Mr. Blake beyond the mean low water mark that existed at that time. The Dept therefore concludes that it has no property interest in the lands and fill created by Mr. Blake in accordance with the Nov. 13, 1969 Order of the Water Resources Board."

In 1996, an attorney for a prospective purchaser of one of the units on which the Community National Bank had foreclosed raised concerns that the condominiums were located on filled land subject to the "public trust" doctrine. See *State v. Central Vermont Ry.*, 153 Vt. 337, 341-44, 571 A.2d 1128, 1130-31 (1989) (recognizing that under public trust doctrine, title to lands submerged beneath navigable waters is held by people as sovereign, in trust for public uses). Boring samples of the property later confirmed that the property was located on fill. Thereafter, the bank grieved the grand list values of the units it then owned, resulting in a reduction of the appraised values for all of the units. In 1998, the bank and the condominium association commenced this action against the State, seeking a declaration that they owned the units free of any public trust interest by the State, or, alternatively, that the State was estopped from asserting any interest in the property.

The parties filed cross-motions for summary judgment. The trial court

issued a written decision and order in favor of the State, concluding that plaintiffs held the property subject to the State's public trust interest; that the diminution in value of the property was insufficient to estop assertion of the State's interest; and that plaintiffs' reliance on the LaRosa letter was misplaced, because the disclaimer of interest therein applied only to fill placed by Blake, not to lands filled earlier. The court subsequently denied a motion to alter or amend the judgment. This appeal followed.

Plaintiffs first contend that the public trust doctrine articulated in *Central Vermont* should be "modified" to recognize the power of the legislature to convey public trust lands into private ownership free of any vestigial claim by the State. We acknowledged in *Central Vermont* that some authority supported recognition of such a power, but did not resolve the question because the record demonstrated that "the legislature did not intend to grant the lands at issue free from the public trust." *Id.* at 347, 571 A.2d at 1133; see also *Opinion of the Justices to the Senate*, 424 N.E.2d 1092, 1103 (Mass. 1981) (legislature may determine that land once vested with public trust has undergone such change over time that it is no longer suitable for public trust purposes). We explained that even assuming such a power on the part of the legislature, an " 'intent to abandon must be clearly expressed or necessarily implied; and if any interpretation of the statute is reasonably possible which would retain the public's interest in tidelands, the court must give the statute such an interpretation.' " *Id.* at 347, 571 A.2d at 1133 (quoting *City of Berkeley v. Superior Court*, 606 P.2d 362, 369 (Cal. 1980)). Construing the statutes at issue in this light, we found no intent — express or implied — to abandon the public trust. See *id.* at 348-50, 571 A.2d at 1133-35.

Here, similarly, the record contains no clear expression of a legislative intent to abandon the public trust interest in the land in question. Plaintiffs rely solely upon the LaRosa letter disclaiming a "property interest in the lands and fill created by Mr. Blake in accordance with" the Water Resources Board permit. LaRosa was then the chief of operations for the Department of Water Resources and Environmental Engineering within the Agency of Environmental Conservation, and as such was charged by statute with managing the State's public trust lands. See 29 V.S.A. § 401. Nothing in the statutory scheme, however, supports the assertion — implicit in plaintiffs' argument — that the Vermont Legislature had delegated authority to LaRosa or the department he represented to convey into absolute private ownership all State interest in public trust lands. As noted, title to the public trust lands is held in trust for the people of Vermont by the General Assembly, see *Central Vermont*, 153 Vt. at 343-44, 571 A.2d at 1131, and even if it could grant title free of the trust, or delegate that authority to an agency of the executive branch, there is no evidentiary basis to support the conclusion that it had done so here. See *id.* at 352, 571 A.2d at 1136 (noting that legislative control over uses of land subject to public trust "cannot be delegated to others"). LaRosa thus lacked the authority to disclaim or abandon the State's interest in the public trust lands.

Relying on the LaRosa letter, plaintiffs further contend that the State should be "equitably estopped" from asserting a public-trust interest in the property. A similar claim was raised and rejected in *Central Vermont*, where we noted that "the doctrine of equitable estoppel is rarely invoked against the government, being allowed only where the injustice that would otherwise result is of sufficient magnitude to justify any effect that the estoppel would have upon the public interest." *Id.* at 354, 571 A.2d at 1136-37. Thus, we held that "[a]s a

practical matter, . . . the doctrine of equitable estoppel [is] inapplicable where the public trust is at stake." *Id.* at 354, 571 A.2d at 1137. Plaintiffs urge that the facts here compel a reconsideration of our ruling. We agree, however, with the trial court's conclusion that the asserted "injustice" to plaintiffs — consisting of diminished property values attributable to the existence of public trust lands — is not of "sufficient magnitude" to warrant application of the doctrine in this case, even assuming that estoppel applied in the public-trust context and that its other elements, including knowledge, intent, and justifiable reliance, were satisfied. See *In re McDonald's Corp.*, 146 Vt. 380, 383-84, 505 A.2d 1202, 1204 (1985) (outlining elements of estoppel, including knowledge of the facts by the party to be estopped, intent that the party's conduct will be acted on, ignorance of the true facts by the other party, and reliance); *Harding v. Commissioner of Marine Resources*, 510 A.2d 533, 537 (Me. 1986) (rejecting argument that public trust considerations include affect on property values).

Finally, plaintiffs contend the trial court erred in finding that the disclaimer of interest set forth in the LaRosa letter applied only to lands filled by Blake, and not to the entirety of the filled land. They assert that the lands filled by Blake were indistinguishable from the previously filled land. Having concluded that the alleged inequity was insufficient to trigger the doctrine of equitable estoppel in this context, the claim is immaterial. Furthermore, contrary to plaintiffs' assertion, the meaning and scope of LaRosa's reference to "lands and fill created by Mr. Blake" is not apparent from the record evidence; there is no indication that LaRosa was fully cognizant of the existence or extent of the previously filled land, or that he actually intended to disclaim the State's interest in such property. The trial court correctly concluded, therefore, that the LaRosa letter was insufficient to estab-

lish the intent and knowledge necessary for application of the doctrine of equitable estoppel, and was equally insufficient to demonstrate a clear legislative intent to abandon the public's interest in the property. See *Central Vermont*, 153 Vt. at 347, 571 A.2d at 1133. Accordingly, we discern no error. See *Bissonnette v. Wylie*, 166 Vt. 364, 370, 693 A.2d 1050, 1055 (1997) (trial court's findings will not be disturbed unless clearly erroneous, and conclusions must be upheld if supported by findings).

*Affirmed.*