STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of              }
        Gerald and Elaine Laferriere    }       Docket No. 223-12-98 Vtec
                                           }
                                           }

<u>DECISION and ORDER</u>

Appellants Gerald and Elaine Laferriere appealed from a decision of the Planning and Zoning Board of the Town of Lyndon, granting conditional use approval to Robert and Mary Howland.

Appellants are represented by Charles D. Hickey, Esq.; Appellees Robert and Mary Howland are represented by Steven A. Adler. The Town of Lyndon did not enter an appearance. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

We specifically note that all descriptions of property transactions in this decision are made only for the purposes of resolving the issues in this appeal within the jurisdiction of 24 V.S.A. Chapter 117. Any disputes as to the ownership or boundaries of the parcel of land at issue in this appeal cannot be resolved by this Court in this case.

Zoning Bylaws were adopted in the Town of Lyndon in 1972; the version in effect through October 1996 was amended effective 1980, but will be referred to consistently with the parties' usage as the 1972 Zoning Bylaws. The Bylaws were amended effective November 1996.

The land at issue in this case is contained within a loop of road formed at the intersection of the former[1] Hogge Hill Road (also shown as Hoag Hill Road on some maps)

---

[1] Since renamed under the E911 program.

and Town Road 61 where Hogge Hill Road curves sharply around to the north. The land is located in the Residential Neighborhood zoning district under the 1996 Zoning Bylaws. Neither party has established the zoning district in which the land was located under the 1972 Zoning Bylaws. It is served by municipal water.

A slightly larger parcel of land, including but not limited to the land contained within the parcel at issue in this case, is shown as Lot #3 on a 1950 survey, a reduced size photocopy of which is in evidence as Exhibit 11. Lot #3's longest dimension is shown on that survey as 140.5', while the bearing of its westerly line is shown as N 6° 30' W. The westerly boundary of the parcel at issue in the present case is formed of three segments having bearings of S 43° 07' W; S 7° 58' E; and S12° 18' W.

In 1977, George W. Drown conveyed a parcel of land to the north and west of the parcel at issue in this case to Steve and Bette Noyes. The parcel of land at issue in the present case, lying within the loop of roadway and bounded at the west by the three segments having bearings of S 43° 07' W; S 7° 58' E; and S12° 18' W, was formed by that 1977 transaction and was excluded from that conveyance. If Mr. Drown had owned it or acquired it by adverse possession or acquiescence prior to that date, he retained it in that transaction.

Section 602.2 of the 1972 Zoning Bylaws provided that "any lot in individual and separate and non-affiliated ownership from surrounding properties[2] in existence on the effective date of these regulations may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less that one-eighth acre in area with a minimum width or depth dimension of forty feet." Section 602.5 provided that "[e]stablishment of a lot which is a portion of a lot of record shall not create non-conformance of an existing structure or lot." Because the parcel in its present configuration was created by a 1977 transaction, after the 1972 Zoning Bylaws were in effect, based on the evidence presented to this Court, it does not qualify for

---

[2] We note that Appellee-Applicant's argument based on Wilcox v. Manchester Zoning Bd. of Adjustment, 159 Vt. 193, 198 (1992), is inapplicable due to the remainder of the adjacent land within the loop of the roadway, rather than to the land under the same ownership on the other side of the roadway.

treatment as an "existing small lot," and in fact should not have been created in 1977. §602.5. However, because the resolution of the land transactions is beyond the jurisdiction of this Court, and could change its qualification as an "existing small lot," this decision will address the outcome of the zoning appeal under both alternatives: as if the parcel does and does not qualify as an existing small lot.

In 1978, the Village of Lyndonville acquired by eminent domain certain roadside land necessary for improving and widening "Tute Hill Road." The land acquired by the Town is referred to in Exhibit D as being shown on certain plans, but the plans were not offered in evidence. The land then acquired by the Village included at least some portion, if not the entirety, of the parcel at issue in the present case, but the Court cannot identify from the evidence which portion of the land was acquired by the Village at that time.

In 1986, Appellee-Applicants acquired a large parcel of land from George W. and Marjorie H. Drown, by warranty deed recorded at Book 90, page 444 of the Lyndon land records. The description of the property corresponds with the parcel marked as ① on Exhibit 11, above or southerly of the dashed line. It is located across Hogge Hill Road from the parcel at issue in the present case, which is contained within Lot #3 on Exhibit 11. Over the years Mr. Drown had parked his construction equipment on Lot #3. From testimony it appears that Appellee-Applicants believed that they had acquired the subject parcel as well in that transaction. Before any site work was done, the parcel was steep and only a small portion adjacent to the upper roadway was useable for this purpose.

At some time prior to 1993, a municipal water line was installed that passes across the northerly portion of the parcel at issue in this case.

In July of 1993, intending to develop the parcel of land at issue in the present case, Appellee-Applicants entered into an agreement with the Village allowing them to purchase and add fill to the property (described as "about .1 acre"), provided that whenever the water line needs repair or replacement, the water line will be disconnected and reinstalled around the lot, with the Village to pay for labor and equipment and Appellee-Applicants to pay for materials. In accordance with this agreement, in November of 1993 the Village quitclaimed its right and title to a parcel described as consisting of "0.3 acres of land more or less" but described by metes and bounds only as the 0.17-acre portion of the 0.3-acre parcel shown

3

in Exhibit 12.  The quitclaim deed is recorded at Volume 112, Page 563 of the Lyndon land records.

Therefore, the parties dispute and this Court is without jurisdiction to resolve whether the parcel owned by Appellee-Applicants is the entire 0.3-acre parcel shown on Exhibit 12, or only the 0.17-acre portion[3] of it described in the 1993 quitclaim deed.   The remainder of this Court's analysis will examine the outcome under both alternatives: as if Appellee-Applicants own the entire 0.3-acre parcel or only the 0.17-acre portion.

The Court takes judicial notice that an acre contains 43,560 square feet, unless otherwise defined by the Zoning Bylaws.  Thus, the 0.17-acre portion contains 7,405 square feet, while the entire 0.3-acre parcel contains 13,068 square feet.  Both are greater than one-eighth of an acre (that is, 5445 square feet), and both have a minimum width or depth greater than forty feet.  If the parcel had been created with its present boundaries prior to 1972, and had then been in "individual and separate and non-affiliated ownership" from the adjacent  property, then under §602.2 of the 1972 Zoning Bylaws it could "be developed for the purposes permitted in the district in which it is located, <u>even though not conforming to minimum lot size requirements</u>."  (Emphasis added.)

---

[3]We note that all of the construction has occurred on the 0.17-acre portion.

However, even if the lot had qualified for the "existing small lot" exemption, that provision only would have exempted the lot from the minimum lot size requirements, not from all of the other requirements of the Zoning Bylaws. If an undeveloped "existing small lot" also fails to meet the setback or other criteria of the Zoning Bylaws, then under the 1972 Zoning Bylaws it must get a variance from those criteria.[4] This is the procedure that seems to have been contemplated by §801.1, second paragraph. Under §4.4.3 and §4.6 of the 1996 Zoning Bylaws, it could apply for conditional use approval for deviations from the maximum lot coverage or the minimum front, side or rear yard requirements. On the other hand, if an undeveloped undersized lot does not qualify for the "existing small lot" exemption, then under both the 1972 and the 1996 Zoning Bylaws, it must obtain a variance from the minimum lot size requirement as well.

The reduced size zoning map found the inside back cover of the 1972 Zoning Bylaws does not clearly show whether this parcel was located in the Commercial Residential or the Village Residential zoning district. However, a Class 2 lot (that is, one served by either off-site sewer or off-site water, but not both) was not allowed in the Village Residential district. §303.1. If the parcel had been located in the Village Residential district, a variance would have been required for a Class 2 lot as well.

We will therefore assume for the purposes of further discussion that the parcel was located in the Commercial Residential district under the 1972 Zoning Bylaws. The minimum requirements for a Class 2 lot with a single-family dwelling were 20,000 square feet of minimum lot size, 100 feet minimum lot width, 30 feet front setback, 15 feet rear and side setback, and a minimum buffer of 6 feet. Under the 1996 Zoning Bylaws, in the Residential Neighborhood zoning district those requirements have been increased to 25,000 square feet of minimum lot size, 125 feet of frontage, 40 feet front setback, 25 feet rear and side setback, minimum buffer of 10 feet, and maximum lot coverage of 20%.

---

[4] As done in the case cited by Appellee-Applicant: Kashner v. Greensboro Zoning Board of Adjustment, Docket No. S279-11-91 OsC (Orleans Superior Ct., Nov. 30, 1998).

If Appellee-Applicants own the 0.17-acre parcel only, then the parcel fails to meet the minimum lot width, front setback and rear setback requirements under the 1972 Zoning Bylaws, and fails to meet the front setback and rear setback requirements under the 1996 Zoning Bylaws. If Appellee-Applicants own the 0.3-acre parcel, then the parcel fails to meet front setback and rear setback requirements under the 1972 Zoning Bylaws, and fails to meet the front setback and rear setback requirements under the 1996 Zoning Bylaws.

In order to determine whether the 1972 or the 1996 Zoning Bylaws apply to this application, we must next resolve whether the 1996 zoning permit expired, and whether some or all of the work on the parcel was done under the authority of a valid permit.

On September 15, 1994, Appellee-Applicants applied for a zoning permit to place a 16' x 70' (1120 square feet) mobile home on the parcel. However, their application described the parcel as having a lot size of "3.75[5] ac[res]." The deed references shown on that application were Volume 90, Page 444 and Volume 112, Page 563. The application was approved on September 19, 1994, and was not appealed. Section 905.2 of the 1972 Zoning bylaws provided that if a zoning permit is approved "all activities authorized by its issuance shall be completed within two years of its date of issue, or the Zoning Permit shall become null and void and re-application to complete any activities shall be required." We note that this language only requires reapplication to complete any activities not completed within the two years but authorized by the permit. It does not by its terms invalidate any work done under the permit prior to the expiration date of the permit. Indeed, retroactive invalidation of work done under an unappealed permit would be contrary to the principles of vested rights established by the Vermont Supreme Court. See, Smith v. Winhall Planning Commission, 140 Vt. 178, 436 A.2d 760 (1981); In re McCormick Management Co., 149 Vt. 585, 547 A.2d 1319 (1988), and discussion of the doctrine in In re Taft Corners Associates, Inc., Docket Nos. 127-7-98 Vtec and 234-12-98 Vtec (Vt. Envtl. Ct., August 19,

---

[5] This application misstated the lot size by a factor of ten, potentially affecting its compliance with both the minimum lot size and the lot coverage requirements of the Zoning Bylaws, and potentially providing a basis for the revocation of the permit.

1999).

Recognizing that they were not able to complete all activities authorized by the 1994 permit by September 19, 1996, on August 9, 1996 Appellee-Applicants filed a new application for a zoning permit to place a 16' x 70' mobile home on the parcel, which their application continued to describe as a lot size of 3.75 acres. The application was approved the same day, August 9, 1996, and was not appealed. Section 905.2 of the 1972 Zoning Bylaws provided that if a zoning permit is approved "all activities authorized by its issuance shall be completed within two years of its date of issue, or the Zoning Permit shall become null and void and re-application to complete any activities shall be required." Nothing in the 1996 application or approval made reference to the former application or approval, nor did it suggest that the former permit's September expiration date would be "extended" for another two years. Rather, the new expiration date of the 1996 Permit was August 9, 1998.

Appellee-Applicants do not appear ever to have applied for or received a variance from the setback or lot width requirements (nor for the minimum lot size), prior to applying for and obtaining either the 1994 or the 1996 Permit. They should have done so before a zoning permit should have been issued.

Amended Zoning Bylaws were adopted in November 1996. Section 4.7 adopts by reference certain state regulations for on-site septic systems. Section 4.4.3 and 4.6 allow requests to deviate from lot coverage or setback requirements to be treated as conditional use applications rather than as variance applications. Under that section, an applicant must presumably satisfy the conditional use standards in §4.2.2, must affirmatively establish that the performance standards of §4.4.5 will be met, and must affirmatively establish that the degree to which the proposal fails to meet the lot coverage or setback requirements is no greater than the degree to which properties in the immediate vicinity also fail to meet those requirements. Under some circumstances, such as those in the present case, the §4.4.3 standards may be more difficult to meet than the requirements for a variance, rather than less difficult.

Appellee-Applicants must receive either a variance under the 1972 Zoning Bylaws or a conditional use permit under the 1996 Zoning Bylaws for the reduced setbacks for the

7

mobile home as installed. Due to their vested rights in the permits issued under the former regulations, it is at Appellee-Applicants' option whether to apply under the old bylaws for a variance or under the new bylaws for a 4.4.3 permit for the reduced setbacks. However, Appellee-Applicants also must receive a variance from the minimum lot size requirements under either the former or the present zoning bylaws. This Court cannot address the variance criteria in the first instance as they were not presented to the Zoning Board of Adjustment for its decision. Appellee-Applicants may wish to first establish the lot size and ownership history of the parcel in Superior Court prior to or simultaneously with such application, as it governs both the size of the parcel (that is, the degree of setback noncompliance) and whether a variance must be sought for the minimum lot size.

Between August 9, 1996 and August 9, 1998, Appellee-Applicants had survey work done and site work done, including placing a substantial amount of fill on the site, had telephone, electric and municipal water service installed, installed a septic tank and leach field to the northeast of the trailer location, and placed the mobile home on the site. The septic tank and leach field were installed in 1997. All the site work and installation of utilities was completed by May of 1998. A mobile home was placed on the lot on August 6, 1998. The 1996 Permit expired on August 9, 1998. As of August 9, 1998 the only remaining work authorized by the 1996 Permit but not completed was to level the mobile home and connect it to the utilities and to obtain a certificate of occupancy. Thus, under §905.2 of the 1972 Zoning Bylaws, Appellee-Applicants only had to apply for a zoning permit to perform that remaining work. They were entitled under the 1996 permit to have the 1972 Zoning Bylaws, as amended as of August 9, 1996, apply to the septic system and leach field, rather than the standards found in the later November 1996 Zoning Bylaws.

On October 13, 1998, Appellee-Applicants applied for a zoning permit for the project as completed and installed. The 1998 application proposed to place the 14' x 66' (924 square foot) mobile home on the parcel, which the application described as .3±acres of filled land and .3±acres of unfilled land, for a total lot size of .6±acres.[6] It is this application

---

[6] This application misstated the lot size by a factor of two, potentially affecting the determination of its compliance with both the minimum lot size and the lot coverage requirements of the Zoning Bylaws.

8

which is on appeal in the present case. It was treated by the Planning and Zoning Board as an application for a conditional use permit for the reduced setbacks under §4.4.3 of the 1996 Zoning Bylaws.

All that should have been reviewed in the 1998 application was whether Appellee-Applicants could hook up the mobile home to the installed utilities, and whether the property qualified for a certificate of occupancy. Appellee-Applicants should have been allowed to elect whether to proceed under the former bylaws for a variance or under the current bylaws for a conditional use permit to deviate from the setback requirements, as the mobile home had been placed on the lot prior to expiration of the 1996 Permit. It was open to the Planning and Zoning Board to determine whether Appellee-Applicants had obtained any necessary variances in the past, or to rule on any variance application under the former bylaws, and to determine whether the lot qualified as an "existing small lot." It was open to the Planning and Zoning Board to determine whether the application for reduced setbacks met the standards §4.4.3 of the 1996 Zoning Bylaws. It was open to the Planning and Zoning Board to determine whether the septic system and other activities on the parcel would comply with the performance standards of §4.4.5 of the 1996 Zoning bylaws. It was not open to the Planning and Zoning Board, however, to require the already-installed septic system to comply with the 1996 Zoning Bylaws, unless or until the 1996 Permit were properly revoked[7] for misrepresentation of the lot area.

Perhaps because of the issues on which the Planning and Zoning Board focused, even though the merits hearing before this Court was de novo, Appellee-Applicants did not present evidence affirmatively establishing that the reduced setbacks will not adversely affect any of the conditional use standards in §4.2.2 , did not present evidence affirmatively

_____

[7] That is, the expiration of the 1996 Permit only rendered it void after August 9, 1998; and action taken under its authority prior to that time, including the installation of the septic system, would not thereby be invalidated. If the 1996 Permit were revoked for misrepresentation, on the other hand, it would become void from its inception.

9

establishing that the performance standards of §4.4.5 would be satisfied, and did not present evidence affirmatively establishing that the degree to which the proposal fails to meet the setback requirements is no greater than the degree to which properties in the immediate vicinity also fail to meet those requirements. From the site visit, it appears to the Court that it would be difficult to establish this latter standard. However, we will not reach the merits of this application because Appellee-Applicants should have been given the opportunity to elect between the 1972 and the 1996 Zoning Bylaws on this application.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant's application for a zoning permit to connect the mobile home to its utilities and to obtain a certificate of occupancy is denied as premature, without prejudice to reapplication after the required variance for the minimum lot size is obtained, and after Appellee-Applicants elect whether to proceed under the former bylaws for a variance for the setbacks or under the current bylaws for a conditional use permit to deviate from the setback requirements.

This decision concludes the present appeal in this Court; the matter is remanded to the Town of Lyndon Zoning Administrator and Planning and Zoning Board for Appellee-Applicants to file any appropriate applications.

Dated at Barre, Vermont, this 6th day of July, 2000.

_____
Merideth Wright
Environmental Judge