STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: McDermott Site Plan Review | } | Docket No. 34-2-09 Vtec |
| (Appeal of McDermott) | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicants Gerald and Mary McDermott (Applicants[1]) appealed from a January 29, 2009 decision of the Planning Commission of the Village of Waterbury denying them site plan approval for a nine-unit, multi-family housing development. Appellant-Applicants are represented by Allan W. Ruggles, Esq.; the Village of Waterbury is represented by William E. Flender, Esq. Interested parties David and Denise Russo are represented by Sarah L. Field, Esq., but did not file memoranda on the pending motions.

Applicants and the Village of Waterbury have each moved for summary judgment on the remaining questions (Questions 1 through 7) of the Statement of Questions.[2]

Summary judgment is appropriate if "taking the allegations of the nonmoving party as true, it is evident that there exist no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Fritzeen v. Trudell Consulting Engineers, 170 Vt. 632, 633 (2000) (mem.). When presented with cross-motions for summary judgment, the Court considers each motion independently and "afford[s] all

---

[1]  Although only Gerald McDermott signed the zoning application forms at issue in this case, for ease of reference this decision will use the term "Applicants" throughout.

[2]  The Statement of Questions originally contained ten questions; however, Appellants withdrew Question 9 on May 15, 2009, and withdrew Questions 8 and 10 on July 20, 2009.

1

reasonable doubts and inferences to the party opposing the particular motion under consideration." In re Chimney Ridge Road Merged Parcels, No. 208-9-08 Vtec, slip op. at 2 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.) (citing DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609).

The following facts are undisputed except as otherwise noted.

Applicants own approximately ten acres[3] of land off Blush Hill Road in the Village of Waterbury. Two acres of Applicants' property are located in the Route 100 zoning district, with the remaining approximately eight acres located in the Village Commercial zoning district. The application at issue in this appeal proposes to build a nine-unit, multi-family housing development on the two acres of the overall parcel located in the Route 100 zoning district.

The parties have not provided any plans, even the sketches required on the zoning permit application forms, relating to any of the various applications on either the two-acre or the eight-acre portions of this property. The parties have not provided any of the applications filed with the state for Act 250 approval by the District Commission, or for water supply and wastewater system approval or stormwater approval by the Agency of Natural Resources (ANR).

On April 14, 2004, Applicants applied for a zoning permit for a nine-unit project on what their application characterizes as a "10.5" acre parcel. The application was referred to the Planning Commission, which granted site plan approval for the nine-unit project on June 24, 2004; this decision has not been provided to the Court. The application was also referred to the Zoning Board of Adjustment (ZBA), which granted conditional use approval as a multi-family use on August 16, 2004; this decision has not been provided to the Court. The Zoning Administrator issued the corresponding

---

[3]  The April 29, 2008 Act 250 decision relating to this property refers to it as 10.17 acres, while the municipal application form filed in 2004 refers to it as 10.5 acres.

2

zoning permit (No. 10-04-V) (the 2004 Zoning Permit) on August 16, 2004. Neither the application nor the 2004 Zoning Permit makes any reference to any other project proposed for the remainder of the property.

The 2004 application was considered by the Planning Commission, ZBA, and Zoning Administrator under the 2001 Zoning Regulations as amended. The parties have not provided the zoning ordinance considered by the Planning Commission or the Zoning Administrator in 2004, but neither party disputes that the nine-unit project complied with that ordinance. The 2004 Zoning Permit states on its face that the permit "is void in the event of . . . failure to complete construction within two years of the date of approval." The 2004 Zoning Permit became final without appeal, and could not thereafter be challenged, either directly or indirectly. 24 V.S.A. § 4472(d).

On October 25, 2004, the Agency of Natural Resources (ANR) issued Wastewater System and Potable Water Supply Permit No. WW-5-2935 (the 2004 ANR WWWS Permit) for the "9-unit, 18-bedroom apartment building on a 10.17± acre lot," referring to engineering plans dated August 30, 2004. This permit authorized an on-site water supply from a drilled well and connection to the municipal wastewater treatment facility.

The parties have not stated when the Interim Zoning Regulations (adopted some time in 2005) were first noticed for a first public hearing. Under 24 V.S.A. § 4449(d),[4] applications filed within the first 150 days after the date of such notice regarding the adoption or amendment of a bylaw are required to be reviewed under the proposed new or amended bylaw, rather than under the old or existing bylaw. The Town and Village of Waterbury adopted interim zoning regulations in 2005. 24 V.S.A. § 4415.[5]

---

[4] This section has been in effect since July of 2001; prior to 2004 it was codified at 24 V.S.A. § 4443(d).

[5] Interim regulations have a two-year duration, which may be extended or reenacted for an additional year. 24 V.S.A. § 4415(a), (f).

3

Under the 2005 Interim Zoning Regulations, the density requirement for the Route 100 zoning district was reduced to a maximum of two multi-family dwelling units per acre.

At some time in early 2005 Applicants filed application No. 09-05-V for a zoning permit for 92 (later apparently reduced to 81) units of multi-family housing on the remainder of the parcel; that application was also referred for site plan and conditional use approval.[6] The parties have not provided any of the zoning permit applications for the 59-unit project. The Planning Commission deliberated on the application on July 12, 2005, and denied it due to concerns with pedestrian safety and vehicular circulation. The parties have not provided the Planning Commission's decision or meeting minutes for that denial. On appeal to this Court, Applicants and the Village resolved the appeal by a January 18, 2006 consent order allowing the application to be revised to propose no more than 59 dwelling units, but to be considered under the Zoning Regulations and site plan review criteria in effect on April 8, 2005 (referring to the 2001 Zoning Regulations as last amended on May 4, 2004).

On August 1, 2005, the state's District Environmental Office issued a Project Review Sheet, submitted based on information provided by Applicants' engineer. The project is described as being on a 10.17-acre tract of land, to "realign sewer line for previously approved 9-unit[7] residential project, add stormwater detention pond and storm drain line[,] plus identify three lots on the project plans, and map wetland." The permit specialist for the ANR noted that a wastewater permit would be required. The Act 250 District Coordinator noted that an Act 250 permit would be required, stating as

---

[6]  Facts as to this application are derived from the January 18, 2006 consent order in No. 163-8-05 Vtec, entered into by Applicants and the Village, copies of which were provided by both parties to the present appeal, and from the narrative in the Planning Commission's May 3, 2007 letter to the District 5 Environmental Commission.

[7]  The number "9" is cut off on the photocopy of this document provided to the Court; however, the internal context of the Act 250 District Coordinator's comment shows that the number must have been "9."

4

the basis for the decision that "the 9 unit proposal, and its related infrastructure, is phase one of a larger undertaking."

On August 22, 2005, the ANR issued an amendment to the nine-unit project's water supply and wastewater disposal permit (WW-5-2935-1). On April 10, 2006, the ANR issued Stormwater Permit #4093-9001 for the nine-unit project. The parties have not provided the Court with a copy of either the 2005 ANR WWWS permit amendment or the 2006 ANR Stormwater permit; they are referred to in a later Act 250 Permit for the nine-unit project. Neither party suggests that any of these permits makes any reference to the 59-unit project.

On April 13, 2006, the Planning Commission granted site plan approval of the 59-unit project, and provided for it to be "phased in over a period of no more than four years," referring to § 300(e) of the Zoning Regulations.[8]

Nothing in any of the municipal documents provided regarding either the nine-unit or the 59-unit project suggests that Applicants ever applied on the municipal level for both projects together on the whole ten-acre parcel, whether as successive phases of a single project or as a Planned Unit Development (PUD). Section 300(e) of the Zoning Regulations allows the two-year time limit for completion of construction to be "extended for up to 4 years as part of the site plan review process" for "phased projects." Section 700(b) allows the Planning Commission to modify the area and dimensional requirements of the Zoning Regulations in connection with approval of a PUD. No other waiver provisions, as authorized by 24 V.S.A. § 4414(8) since July 1, 2004, appear to have been adopted in the Zoning Regulations.

On May 2, 2006, the District 5 Environmental Commission issued Act 250 Land Use Permit (Act 250 Permit) #5W1452, "specifically authoriz[ing] the construction of 9 multi-family housing units on a 10± acre tract," and describing it as "the first phase of a

_____

[8] All references to specific sections of the Zoning Regulations are to the regulations adopted October 29, 2007, the only edition of the Regulations provided by the parties.

larger housing proposal on the tract." Act 250 Permit #5W1452 expressly incorporated the stormwater and the water supply and wastewater disposal permits issued for the nine-unit project by ANR. Act 250 Permit #5W1452 stated that all site work and construction had to be completed by October 1, 2007, unless an extension of that date is applied for prior to the deadline and is approved.

On May 1, 2006, Applicants submitted Zoning Application No. 15-06-V to the Zoning Administrator to "renew [the] existing [2004] zoning permit" for the nine-unit project on 10.15 acres. The Planning Commission granted site plan approval on June 7, 2006, and the Zoning Administrator issued the corresponding zoning permit on June 8, 2006 (the 2006 Zoning Permit).[9] The cover letter stated that Applicants "must complete all requests made on this permit within Two Years from permit issue date"[10] and noted the fifteen-day appeal period (to June 24, 2006) before construction could be started. The 2006 Zoning Permit became final without appeal, and cannot be challenged, either directly or indirectly. 24 V.S.A. § 4472(d).

At some time in the first half of 2007, the District 5 Environmental Commission held hearings on Act 250 application #5W1452-1. This application is described in a later District Commission decision (on Act 250 Permit #5W1452-2), as having been a review of a 48-unit proposal constituting phase two of the overall project, under selected

---

[9] If considered as a nine-unit multi-family project only on the two acres of the property located in the Route 100 zoning district, the nine-unit project did not comply with the density requirement for that district. In the 2009 decision that is the subject of the present appeal, the Planning Commission stated that it had "erred in granting approval" of the 2006 renewal application by "fail[ing] to review the project under the new requirements." Waterbury Planning Commission, Special Meeting Approved Minutes, at 1, ¶ 2 (Jan. 29, 2009.)

[10] Section 300(e) of the Zoning Regulations provides, in pertinent part, that if a zoning permit is issued, "all the activities authorized by its issuance shall be completed within 2 years from the time at which all site related construction permits have been issued, or the zoning permit shall become null and void and reapplication to complete any activities shall be required."

6

criteria.   The Planning Commission, the Village Trustees, and the Town Selectboard submitted comments to the District Commission on the traffic, aesthetics, and municipal plan aspects of the proposal in early May of 2007.

On August 10, 2007,  the Municipal Manager for the Village wrote a letter to Applicants notifying them that the Village had adequate capacity to provide both municipal water supply and municipal wastewater disposal service to all 68 units proposed for development in both the nine-unit project and the 59-unit project.  In the letter, the Municipal Manager referred to the projects as a "68-unit development."

On September 28, 2007, Applicants filed an application to extend the October 1, 2007 expiration date for Act 250 Permit #5W1452 for the nine-unit project.  On October 23, 2007, Applicants filed Act 250 application #5W1452-2 to proceed further with their master plan review of the 59-unit project.

The parties have not provided a date on which the first public hearing was noticed for the adoption of the Interim Zoning Regulations as permanent Zoning Regulations.[11]  The Zoning Regulations were adopted on October 29, 2007.

On April 29, 2008, the District Commission issued two related decisions.  It issued Act 250 Permit #5W1452-A, amending the nine-unit project's expiration date to extend it until October 2010.  It also separately issued Findings of Fact and Conclusions of Law #5W1452-2, approving master plan review of the 59-unit project under additional criteria, and noting that several criteria addressing wastewater disposal, stream crossing details, water supply, and plantings remained to be addressed. In connection with the 59-unit project, Applicants had proposed a construction duration of five years for the 59-unit project, constructing approximately eight to 16 units (that is, one or two buildings) per year, completing the project by the end of 2010.

---

[11]   See text accompanying note 4, above.

On June 13, 2008, Applicants submitted application No. 25-08-V to the Zoning Administrator for approval of the nine-unit project on ten acres. This application was filed more than two years after June 8, 2006, the date on which the 2006 Zoning Permit had been issued, but before two years had elapsed from that permit's "effective" date of June 24, 2006. It was referred to the Planning Commission by the Zoning Administrator "for Site Plan Review and Renewal." Two months later, on August 20, 2008, Applicants withdrew this application, in a letter that characterized it as having been an application "for extension of the deadline to construct an approv[ed] 9 unit project on a two (2) acre lot."

Applicants submitted plans to the ANR dated September 19, 2008, regarding the water and sewer service to both the nine-unit project and the 59-unit project, proposing to connect both projects to the municipal water supply and to the municipal wastewater systems. On October 30, 2008, the ANR issued two separate Wastewater System and Potable Water Supply Permits. The one for the 59-unit project (No. WW-5-4919) characterized the project as the "construction of 8 apartment buildings with a total of 59 units on [an] 8.14± parcel known as Lot 2." The one for the nine-unit project (No. WW-5-2935-2) characterized the project as "relocating the sewer lines and water service to a 9-unit, 18 bedroom apartment building previously approved by WW-5-2935 and WW-5-2935-1, on a 2.03± acre parcel known as Lot 1" and stated that it superseded the 2004 and 2005 Wastewater and Water Supply permits.

If the project property was actually subdivided into a 2-acre Lot 1 and an 8-acre Lot 2, no documents reflecting the subdivision have been provided to the Court.

On December 16, 2008, Applicants submitted Zoning Application No. 57-08-V to the Zoning Administrator. That application described the project as nine units on a two-acre lot. It was referred to the Planning Commission for site plan approval. As reflected in the Planning Commission decision, the project added ten spruce trees for landscaping, and incorporated the stormwater management needed for the nine-unit

8

building into the stormwater management system for the adjacent 59-unit project. The Planning Commission denied the application at its January 29, 2009 meeting in a decision reflected in the minutes of that meeting, stating that the nine-unit project on two acres would violate the density requirements of the Route 100 zoning district. In that district, the density of multi-family housing is limited to two multi-family dwelling units per acre. Applicants brought the present appeal.

On February 28, 2009, Applicants applied to complete the Act 250 review of the 59-unit project; a draft decision was circulated for comment in April 2009 under #5W1452-3.

Sequence of Municipal Permit Process

Under the Town and Village of Waterbury Zoning Regulations (Zoning Regulations), no development, building construction, or change of use may commence unless a zoning permit is issued by the Zoning Administrator. Zoning Regulation § 300(a). To obtain a zoning permit, an applicant must submit a completed application to the Zoning Administrator. If the application is for a proposal that only requires a zoning permit, such as a single-family house that is a permitted use in the district, the Zoning Administrator may proceed to issue or deny the permit, depending on whether it meets the dimensional and district requirements in the zoning ordinance. Otherwise, if the application is for a proposal that requires a discretionary ruling from the Planning Commission, Zoning Board of Adjustment (ZBA), or both,[12] such as conditional use approval, site plan approval, subdivision approval, or a variance, the Zoning Administrator must first refer the matter to the appropriate panel for any approvals necessary, before the Zoning Administrator may rule on the zoning permit. Id. § 300(e); see also Wesco, Inc. v. City of Montpelier, 169 Vt. 520, 523 (1999). Only after the

_____

[12] Or from a development review board in a municipality with a combined board. See 24 V.S.A. § 4460.

9

Planning Commission and ZBA have issued all necessary approvals and all other requirements are met, may the Zoning Administrator take the "final step" of issuing the zoning permit. See § 300(d); Appeal of Ghia, No. 31-2-03 Vtec, slip op. at 2 (Vt. Envtl. Ct. Nov. 19, 2003) (Wright, J.)

Questions 1, 2, 3, 4, and 7: Expiration of the 2006 Zoning Permit

Section 300 of the Zoning Regulations governs "Zoning Permits." Section 300(e) states:

> If the zoning permit is issued, all the activities authorized by its issuance shall be completed within 2 years from the time at which all required site related construction permits have been issued, or the zoning permit shall become null and void and reapplication to complete any activities shall be required. On phased projects, the time limit may be extended for up to 4 years as part of the site plan review process.

Under this provision, once "all required site related construction permits have been issued" the two-year period commences. The zoning permit becomes "null and void" once that period ends, absent some action that has the effect of tolling or suspending the two-year time period, unless the permittee has obtained an extension for a phased project from the Planning Commission during site plan review.

Section 300(h) of the Zoning Regulations states that "[n]o zoning permit shall take effect[,] and the corresponding land development may not commence[,] until all required local, state, and federal permits have been issued."

In interpreting these provisions, the Court must read the sections together, "giving effect to the whole and every part of the ordinance." In re Pierce Subdivision Application, 2008 VT 100, ¶ 28 (citing In re Stowe Club Highlands, 164 Vt. 272, 279 (1995)). Reading §§ 300(e) and (h) together, the two-year period for completing construction of a project authorized by a zoning permit starts to run after all required "site related" permits have been issued, which includes all local, state, and federal site-

related permits for the project covered by that zoning permit.  See Preseault v. Wheel, 132 Vt. 247, 252 (1974) (noting the "interrelationship between State and municipal permits").  If the municipality had intended to restrict § 300(e) only to other local permits, it is evident from § 300(h) that the drafters understood how to specify the applicable governmental permitting level.

In addition, as discussed above, the zoning permit is the final stage in the municipal zoning permit process, after all site plan approval, subdivision approval, conditional use approval, and variance or waiver approval has been obtained from the Planning Commission and the ZBA.  If § 300(e) only referred to obtaining all required municipal permits before the construction period would start to run, no party has suggested what other municipal permits might be necessary in the Village of Waterbury after the final zoning permit had been issued. That is, if § 300(e) only referred to obtaining all required municipal permits, the language regarding "all required site related construction permits" would become surplusage.

In construing a zoning ordinance, as in construing a statute, the Court is required to presume that "all language in a statute or regulation is inserted for a purpose" and is directed not to "allow a significant part of a statute to be rendered surplusage or irrelevant."  In re Miller, 2009 VT 36, ¶ 14 (internal citations and quotations omitted). Instead, the Court must "strive where possible to give effect to every word, clause, and sentence."  Slocum v. Dep't of Soc. Welfare, 154 Vt. 474, 481 (1990) (citing State v. Tierney, 138 Vt. 163, 165 (1980)).  See also Kapusta v. Dep't of Health/Risk Mgmt., 2009 VT 81, ¶ 12 ("We presume that the Legislature does not enact meaningless legislation, and that it chooses its language advisedly so as not to create surplusage.") (citing Loiselle v. Barsalow, 2006 VT 61, ¶ 16, 180 Vt. 531 (mem.)).

In the present case, in order to determine whether or when the zoning permit for the nine-unit project expired under § 300(e), it is necessary to determine first whether or when the land development authorized by the 2006 Zoning Permit had all required site-

11

related permits necessary to commence construction. This date determines the start date for the two-year construction completion period under the permit and § 300(e).

No federal permits are argued to have been required for the nine-unit project. Regardless of whether "all required site related construction permits" is interpreted to mean only the nine-unit project's municipal permits, or is interpreted to include its state permits as well, as of June 8, 2006, Applicants had obtained all required site-related permits for the nine-unit project.

Applicants had obtained the state Wastewater System and Potable Water Supply Permit No. WW-5-2935 (issued on October 25, 2004) and No. WW-5-2935-1 (issued on August 22, 2005), the state Stormwater Permit #4093-9001 (issued on April 10, 2006), the state Act 250 Permit #5W1452 (issued on May 10, 2006), and the municipal Zoning Permit No. 16-06-V (issued on June 8, 2006), for which site plan approval and conditional use approval had earlier been granted by the Planning Commission and the ZBA, respectively. As of June 8, 2006, no other site-related construction permits were needed for Applicants to commence construction on the nine-unit project.

None of the permits relating to the nine-unit project provided by the parties in connection with the pending motions placed any limitations on beginning construction on the nine-unit project. None of those permits for the nine-unit project were conditioned on obtaining any permits for the 59-unit project.

Applicants argue that the projects were linked together as two phases of a single project, so that the entire project did not have all of its site-related construction permits until they had obtained all of the required permits for both the nine-unit project and the 59-unit project. However, despite Applicants' description of the nine-unit and the 59-unit projects as being "linked" or as being two "phases" of an overall project, Applicants applied for and received separate approvals for every permit that has been issued for each of the two projects. Only the Act 250 permit refers to the nine-unit project as the first phase of a larger project, and even the Act 250 permit for the nine-

12

unit project, #5W1452, allowed Applicants to commence the nine-unit project without regard to when or whether they would also commence the later phases of the 59-unit project.

Applicants' own actions requesting zoning permit renewal suggest that they themselves understood the zoning permit for the nine-unit project to be unrelated to the zoning permit for the 59-unit project, and that its duration was limited to two years. Applicants applied for a zoning permit for the nine-unit project initially in 2004 and applied for its renewal every two years, in 2006 and 2008, corresponding with the two-year expiration dates for each successive permit for the nine-unit project, even though by early 2005 they were also involved in applying for the larger proposal that would become the 59-unit project. Both Applicants' 2006 application and their application submitted in June 2008 (which was later withdrawn) refer to the application as being one for "renew[al] [of the] existing zoning permit" or "extension of the deadline to construct."

Most importantly, Applicants never requested or obtained an extended zoning permit duration for the nine-unit project as part of a larger phased project, even though in the Act 250 process they had characterized the nine-unit project as phase one of the larger project. Section 300(e), in effect at least as of the time of the 2006 Zoning Permit, provides for an extension of the time limit for up to four years beyond the permit's initial two-year duration. Because Applicants withdrew their request to extend the term of the 2006 Zoning Permit filed in June 2008, that application is not before the Court in the present appeal. Rather, all that is before the Court is Applicants' zoning application 57-08-V filed on December 16, 2008, which requests approval of the nine-unit project on a two-acre lot, and does not characterize it as a phase of or related to the 59-unit project.

Accordingly, as of the issuance of the 2006 Zoning Permit on June 8, 2006, Applicants had all site-related construction permits required under both municipal and

13

state law. The two-year time period imposed by § 300(e) began on the date of the 2006 Zoning Permit's issuance, June 8, 2006,[13] and expired two years later on June 8, 2008.

Questions 5 and 6—"Vested Rights" Under the 2004 and 2006 Permits

Applicants also argue that they obtained vested rights to construct the project authorized by their expired zoning permits, and are therefore entitled to a reissuance of those permits under the regulations in effect in 2004.[14] See Preseault, 132 Vt. at 253 (holding that a permittee has a vested right and is entitled to a reissuance of an expired building permit[15] under the regulations in effect when it was issued, if construction on the permitted project is delayed by litigation and the permittee has otherwise proceeded in good faith). The Court in Preseault applied its reasoning "even where the zoning was meanwhile changed so that the project is nonconforming." Id.

---

[13] The date of issuance is distinct from the date on which the 2006 Zoning Permit "took effect," which occurred on June 24, 2006, as stated in the June 8, 2006 permit, due to the 15-day appeal period required by 24 V.S.A. § 4464(a) and Regulations § 300(g).

[14] As Applicants did not begin construction on the nine-unit project under the 2006 Zoning Permit, it is not necessary to address whether, by commencing construction, Applicants could have acquired any vested rights to the Planning Commission's 2006 site plan approval (as distinct from the zoning permit). The Vermont Supreme Court has touched on the distinction between municipal panel approvals and the permits that follow. See Levy v. Town of St. Albans, 152 Vt. 139, 144 (1989) (stating that "references to the time limit on building permits. . . do not pertain to the underlying zoning approval," and finding that the applicants "must be permitted to rely on the finality of the [previous approval], even while having to comply with the formality and costs of procuring a new building permit"); In re Appeal of Meunier, No. 99-285, slip op. at 3 (Vt. Jan. 6, 2000) (unpublished mem.) (construing Levy to stand for the principle that "where a project takes more than twelve months to construct, town cannot revoke [underlying] approval when one-year permit expires but may require formality and cost of acquiring new permit").

[15] A building permit is issued by a building inspector under 24 V.S.A. ch. 83 in municipalities that have adopted a building code.

14

During the duration of the 2004 Zoning Permit, Applicants did obtain vested rights to construct the nine-unit project as authorized by that permit, even though the Zoning Regulations were amended during the duration of that permit to change the density requirements applicable to the project. However, Applicants have not shown any reason why those vested rights did not expire with the expiration of the 2004 Permit.

Similarly, during the duration of the 2006 Zoning Permit, Applicants did obtain vested rights to construct the nine-unit project as authorized by that permit, even though the Zoning Regulations had already been amended to change the density requirements applicable to the project. See 24 V.S.A. § 4303 (13), (14) (nonconforming building or lot defined to include nonconformities created by error of the zoning administrator). However, Applicants have not shown any reason why those vested rights did not expire with the expiration of the 2006 Permit.

In Preseault, the Court held that the permittee had a vested right in an expired building permit issued under a previous ordinance, because he was unable to begin construction due to litigation over an Act 250 permit application that was also required prior to construction. Id. at 253–55. The permittee in that case could not begin construction on the development authorized in the building permit because he had not obtained an Act 250 permit for that same project. Id. The Court in Preseault explained as its rationale:

> For this Court to hold that a developer, proceeding as expeditiously as possible, must be denied reissuance of the permit he first applied for and received solely because his application for a second essential permit resulted in litigation of more than a year's duration would go beyond the desired and worthwhile goal of controlling development. Such a holding would make development a pure gamble; success would depend on the whim of adversaries to litigate or not. This result would contravene our announced policy that a good faith developer should be able to proceed with assurance.

15

Id. at 254.

In Waterbury, § 300(e) of the Zoning Regulations addresses exactly the same problem as that presented in Preseault. Section 300(e) prevents the permit validity period from beginning to run until all other site-related permits have been obtained. Under § 300(e), if a permittee is tied up in litigation over another site-related permit for the same project as is covered by the zoning permit, the two-year zoning permit period would not begin to run until after the litigation is resolved and the other necessary permit is obtained.

Applicants argue that construction on their permitted nine-unit project was delayed by litigation over the 59-unit project, and that they have otherwise proceeded in good faith, so that, under the reasoning of Preseault, they should be allowed to retain their 2006 Zoning Permit, or to have it renewed. However, they have not shown that any litigation delayed or affected the site-related permits for the nine-unit project.

Rather, in the present case, Applicants had obtained all required permits for the nine-unit project, including its Act 250 permit and other state permits, as of the issuance of the 2006 Zoning Permit on June 8, 2006. Under § 300(e), the two-year period during which the 2006 Zoning Permit was valid began on its issue date of June 8, 2006.

Nothing to do with the permits or with litigation over the permits for the nine-unit project prevented Applicants from commencing construction on the nine-unit project as of June 24, 2006, or prevented Applicants from requesting an extension of the construction completion date for the nine-unit project.

Similarly, nothing to do with the permits or with litigation over the permits for the 59-unit project prevented Applicants from commencing construction on the nine-unit project as of June 24, 2006, or prevented Applicants from requesting an extension of

the construction completion date for the nine-unit project due to anticipated revisions[16] in the water supply system, wastewater disposal system, or stormwater system to serve both projects.

Applicants have shown only that the 59-unit project's site plan approval was delayed by litigation, from August 11, 2005 through resolution of the appeal on January 18, 2006.  Applicants have not shown that the sequence of events in obtaining any of the permits for the 59-unit project in any way prevented them from commencing or completing construction under their 2006 Zoning Permit for the nine-unit project before that permit expired or before applying for a further extension of that permit.  Therefore, under § 300(e) and Preseault, Applicants did not acquire vested rights in the 2006 Zoning Permit.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Village of Waterbury's Motion for Summary Judgment is GRANTED, and the Appellant-Applicants' Motion for Summary Judgment is DENIED, as to Questions 1 through 7.  A telephone conference has been scheduled (see enclosed notice) to discuss whether any further issues remain.  The parties may file separate proposed judgment orders, for discussion at that conference, or may file an agreed proposed judgment order in lieu of the conference, if they agree that this decision concludes this appeal.

Done at Berlin, Vermont, this 19th day of October, 2009.

_____
Merideth Wright
Environmental Judge

---

[16]  Applicants' applications for the revised state permits for the water and wastewater systems post-date the expiration date of the 2006 Zoning Permit, but they had made inquiries resulting in the 2007 letter from the municipal manager regarding the capacity of the municipal water and wastewater systems.